THE PEOPLE OF THE STATE OF NEW YORK ex rel. ABRAHAM M. DITCHIK, Relator, *v.* SHERIFF OF THE COUNTY OF KINGS, Respondent.

Supreme Court, Special Term, Kings County, April 4, 1939.

*Milton Hertz*, for the relator, for the motion.

*John Harlan Amen, Special Assistant Attorney-General [Harold S. Kennedy* and *Samuel S. Isseks* of counsel], opposed.

CUFF, J.   Relator has been held in $50,000 bail as a material witness by order of Mr. Justice McCURN, presiding at the Extraordinary Term of the Supreme Court convened in Kings county by the Governor of the State.   Petitioner claims (a) that the affidavits upon which the order was based contain " no facts establishing or showing that said relator is a material witness for the People in a criminal action pending;" (b) that relator was committed without a hearing; (c) that affidavits upon which the order was based contain " no facts establishing or showing that said relator will not appear and testify;" (d) that the amount of the undertaking required — $50,000 — is prohibitive and that a lower amount would suffice to insure his appearance because he is a man with a family consisting of a wife and six children; that he is a dentist with a practice to protect; that he is well known; that he has been available and actually appeared at the office of the Deputy Attorney-General in charge of the pending investigation repeatedly for the past two months; and that he has no intention of leaving this jurisdiction.

·The order detaining relator was made pursuant to section 618-b of the Code of Criminal Procedure, which provides in part: " Whenever a judge of a court of record in this State is satisfied by proof on oath, that a person residing or being in this State is a necessary and material witness for the people in a criminal action  *  *  * he may, after an opportunity has been given to such person to appear before such judge and be heard in opposition thereto, order such person to enter into a written undertaking, with such sureties and in such sum as he may deem proper, to the effect that he will appear and testify."

Specification (b) that no hearing was afforded must be summarily overruled because the transcript annexed to the answering affidavit marked Exhibit A shows that relator appeared at the hearing and was heard in opposition.

҆In specifications (a) and (c) petitioner argues that the affidavits supporting Justice McCURN's order lack facts.   It is his contention

that there was no " proof on oath " that relator is a witness — material and necessary to the prosecution of a criminal case — who will not appear and testify when needed; that at the most " conclusions " were alleged.

It is correct that the Deputy Attorney-General's statement under oath that his investigation before the grand jury reveals that relator " possesses a great deal of information bearing on various acts and activities under investigation " is a conclusion. When the prosecutor swears that relator " will not appear and testify when required because various persons against whom he may give evidence will attempt to influence him not to so testify and may cause him to leave the State or to conceal himself," he states a conclusion. These conclusions, however, are the result of knowledge that he has gained by examining witnesses before the grand jury concerning acts of relator and others associated with him and they merit, and evidently were given, respectful consideration. Justice McCurn regarded them as some proof.

It will be observed that section 618-b prescribes that an order may issue when the " proof on oath " satisfies the judge. That proof is not required to be evidence of the kind upon which judgments rest. If that were the quality of proof demanded this important statute would so indicate. If the proof *satisfies* the court, the order may issue.

The objective that this statute seeks to attain should ever be kept in mind, and resort should not be had to reading into it requirements, not clearly deducible from its language; requirements, which would expose the prosecutor's hand and aid the escape from criminal responsibility of those whom the law intended to bring to justice, by the operation of this very section. The clear intention of the legislation should not be frustrated by applying acid tests to the proof submitted, which of necessity oft-times must be exactly the same as that adduced before Mr. Justice McCurn, namely, conclusions and opinions because of the nature of that proof and the prohibition against revealing happenings that occur in the grand jury room.

This statute has been declared unconstitutional as " an unwarranted interference with the liberty of the individual " and because " oppressive use might be made of such power " (*People ex rel. Maloney* v. *Sheriff*, 117 Misc. 121 [1921], BENEDICT, J.); constitutional (*People ex rel. Farina* v. *Wallis*, 208 App. Div. 720 [1924]; *People ex rel. Bruno* v. *Maudlin*, 123 Misc. 906 [1923], TAYLOR, J.); characterized as " harsh," as interfering " with personal liberty to an extreme " and as a law requiring " strict compliance with its

provisions." (*Matter of Prestigiacomo*, 234 App. Div. 300 [1932] [4th Dept.].) Although in the latter case the court declined to express an opinion as to its constitutionality, the statute has apparently won approval as to its validity many times, as evidenced by the following rulings sustaining orders issued pursuant to its authority: '

" Commitment of Abraham Friedman, August, 1937; writ dismissed by Mr. Justice HOFSTADTER, September 14, 1937;

" Commitment of Jerry Bruno; writs dismissed by Mr. Justice LEVY, February, 1937; Mr. Justice BLACK, March 27, 1937; Mr. Justice MILLER, April 14, 1937;

" Commitment of Casalina; writ dismissed by Mr. Justice FRANKENTHALER, April 24, 1937;

" Commitment of Louis Adelman; writs dismissed by Mr. Justice CAREW, May 25, 1937; Mr. Justice VALENTE, June 6, 1937;

" Commitment of John Rogers; writ dismissed by Mr. Justice PECORA, August 12, 1936;

" Commitment of Wishensky; writ dismissed by Mr. Justice BLACK, October 27, 1936;

" Commitment of Julius Williams; writs dismissed by Mr. Justice COLLINS, November 14, 1938; Mr. Justice BLACK, December 30, 1938;

" Commitment of Moscoti; writ dismissed by Mr. Justice SCHMUCK, June 7 and June 22, 1938;

" Commitment of Max Lippe; writ dismissed by Mr. Justice BRENNAN, January 25, 1939; writ dismissed by Mr. Justice McCURN, February 15, 1939."

Section 618-b is an effective instrument by which law enforcement agencies endeavor to cope with offenders against the Penal Law whose proclivities for spiriting away witnesses has, experience reminds us, defeated many just prosecutions in years gone by. Commission of crime seems to grow more difficult of detection as inventors produce innocent and useful devices which the criminally inclined are able to employ effectively in the pursuit of their nefarious ways.

The State wrote into the Criminal Code section 618-b as a means to reasonably assure the appearance of key witnesses at a criminal trial. That it is a restraint and interference upon liberty must be conceded; but so is serving on a jury which is locked up night after night and week after week for the duration of a long trial. It is a restraint like other statutory and regulatory interferences with complete freedom of action which each citizen must endure upon finding himself in unusual circumstances — even innocently. The

sacrifice is made in the interest of the orderly administration of government.

The statute provides for a hearing. The court may retain control of the situation by the form of the order. There is no definite commitment for a term. At any time an inquiry as to the detention may be instigated by the court. The judge before whom the application is made must be " satisfied " with the proof. Those are protective features of the law against " oppressive use of the power." The writ of habeas corpus, sued out again and again if necessary, is always available, and the hearing of that application may be had before a different judge each time. The safeguards that surround the statute brook no untoward abuses and permit no oppressive measures. The provision seems to me to be constitutional.

A point raised on this application is that relator has informed the prosecutor that he has no knowledge of the commission of any crimes. Therefore, says petitioner, he cannot possibly be a witness for the People. The answer to that objection is the statute itself. It does not state that the person must show a willingness to testify. It merely requires that the court be satisfied that such person " is a necessary and material witness for the people." The court could not be assured that such person would testify at the trial, even if he said he would and exhibited his sworn statement. That he possesses the knowledge renders him a witness. He may testify or he may refuse to testify, he is a witness, none the less. To be identified may be his role.

Specification (d) treats with the amount of the undertaking and refers to relator's substantial connections — family and professional. The bail fixed is not excessive. It is based upon the nature of the activity with which, the court believed, relator has been associated. Charges against doctors alleging performance of abortions by them and payment of money to avoid prosecution are serious matters; a corrupt enterprise possibly occasioning the use of large amounts of money. " Fabulous sums," the court was told at the hearing, had been passed along.

The bail herein must be substantial to avoid the farce of having some interested individuals supply the funds and thus effect relator's release knowing that he would not return; knowing that the money would be forfeited, but hoping, in return for the investment, that the prosecution would be handicapped, if not defeated, by his absence from the trial.

While I have discussed heretofore the proof submitted to Justice McCurn upon which he made the order fixing bail, I must

add that the showing by the prosecutor before me was impressive. The affidavits of Blank and Duke contained definite charges of corruption, to wit, that they paid large sums of money to relator to be transmitted to others for the purpose of accomplishing corrupt and criminal ends.

I am in accord with Justice McCURN on the evidence adduced before me that relator has information concerning the pending investigation which renders him a material and necessary witness for the People.

The offer was made at the hearing by Mr. Harold R. Kennedy of Deputy Attorney-General Amen's staff to submit the grand jury minutes to the court. He said that those minutes would show that relator was a key man — *the* key man — in the criminal scheme under investigation. I stated that I would not accept the offer unless the petitioner consented, because it was not intended that the minutes be made a part of the record. At first petitioner acquiesced but later, when the Deputy Attorney-General was allowed an additional day to submit his answering affidavits, that consent was withdrawn. Of course, the court has not seen the grand jury minutes. This application must be denied. The writ is dismissed.