THE PEOPLE OF THE STATE OF NEW YORK ex rel. OTTO F. FUSCO, on Behalf of ANTHONY GALGANO and MICHAEL GALGANO, Relators, against TIMOTHY RYAN, as Warden of Bronx City Prison, Defendant.

Supreme Court, Special Term, Bronx County, July 16, 1953.

*Otto F. Fusco* for relators.

*George B. De Luca, District Attorney (Milton Altschuler* of counsel), for defendant.

MATTHEW M. LEVY, J. Section 618-b of the Code of Criminal Procedure provides that '' Whenever a judge of a court of record in this state is satisfied, by proof on oath, that a person residing or being in this state is a necessary and material witness for the people in a criminal action or proceeding pending in any of the courts of this state, he may, after an opportunity has been given to such person to appear before such judge and be heard in opposition thereto, order such person to enter into a written undertaking, with such sureties and in such sum as he may deem proper, to the effect that he will appear and testify at the court in which such action or proceeding may be heard or tried, and upon his neglect or refusal to comply with the order for that purpose, the judge must commit him to such place, other than a state prison, as he may deem proper, until he comply or be legally discharged. * * * For the purpose of compelling the attendance of any person before him to show

cause why he should not be required to enter into such an undertaking to appear as a witness or be committed in default thereof, such judge may at any time upon the proof on oath required as hereinbefore set forth, make an order in the nature of an attachment requiring such person forthwith, or at such time as may be fixed therein, to appear before such judge.''

By separate orders of a County Judge of Bronx County, dated July 6, 1953, Anthony Galgano and Michael Galgano were, in pursuance of section 618-b, committed to the New York City prison in Bronx County, there to be detained as necessary and material witnesses in the event of their failure to furnish undertakings in the sum of $50,000 each, conditioned upon their respective appearance and testifying in a certain criminal action in the County Court of Bronx County entitled '' The People of The State of New York against John Doe and Richard Roe, Defendants '' — the individuals thus specified being unknown. In the proceedings before him, one with respect to Anthony Galgano and the other with respect to Michael Galgano, the County Judge was presented with adequate prima facie proof on oath that, on or about July 5, 1953, one Manzo was murdered; that two unknown persons, acting in concert with each other, had thereafter in the county of The Bronx removed Manzo's body from a certain automobile; that the automobile in question had, prior to June, 1953, been owned by Michael Galgano; that on July 5, 1953, it was owned and controlled by Anthony Galgano, who had had the vehicle registered in the name of one D'Amato; that conflicting statements had been given to the police by the Galganos in regard to the case; that a criminal proceeding was pending before the Grand Jury of the county of The Bronx in respect of the homicide; and that in the official opinion of the police the Galganos were likely to leave the jurisdiction of the criminal court and be unavailable as witnesses for the People when required.

This is a habeas corpus proceeding instituted before me, and heard on July 7, 1953, in behalf of both of the Galganos — whom I shall, for convenience, call the relators. They allege that their imprisonment and restraint are in violation of their constitutional and legal rights. Their principal contentions are that, at the time of the hearings before the County Judge, there was no criminal action or proceeding pending, that the relators are in fact suspects of the murder and not prospective witnesses for the People in the investigation or prosecution, that the present commitment is a subterfuge by the police and the District Attorney to hold the relators as suspects without evidence

to name them as such, that their incarceration is punishment and in retaliation for their refusal to co-operate with the authorities, that at the time of the proceedings for commitment or bail before the County Judge, they were not informed of or accorded their right to counsel, that they were not given an opportunity to be heard in opposition to their commitment or the fixation of bail, and that the bail set by the County Judge — $50,000 each — was and is excessive.

The District Attorney asserts that "there is an absolute necessity that the orders committing the aforesaid two material witnesses remain undisturbed". And, from the record, the relators do not at all appear to me to be angelic victims of the claimed diabolic plot they have sought so eloquently to depict, or to be completely unacquainted with the heinous crime properly and vigorously being inquired into by the prosecuting officials. Nevertheless, in consonance with and in protection of our democratic way of life, we must not permit ourselves to be beguiled into acceptance of the guiding thesis of the cynical totalitarian that "the end justifies the means", and that the Galganos "deserve what they got". If the relators have not been accorded their lawful rights, or if their constitutional guarantees have been unlawfully invaded, it is the judicial function of the ancient and powerful writ of habeas corpus, when sued out in this court, to redress such legal wrongs and to maintain such basic safeguards. And this "greatest of all writs" (*People ex rel. Tweed* v. *Liscomb,* 60 N. Y. 559, 566) — "cherished by generations of free men" (*Hoff* v. *State of New York,* 279 N. Y. 490, 492) and whose aim "by immemorial tradition" "is a justice that is swift and summary" (*People ex rel. McCanliss* v. *McCanliss,* 255 N. Y. 456, 459) — may under our law be invoked not only by the good and the pure and the innocent, but by the bad and the guilty and the dishonest (*People ex rel. Gross* v. *Sheriff of City of N. Y.,* 302 N. Y. 173, 176, dissenting memorandum).

Proof was presented before me by way of the official stenographic minutes of the two separate hearings before the County Judge, both of which were held on July 6, 1953. From those minutes, it appears that those who attended before the County Judge in each case were the assistant district attorney (with perhaps the arresting police officers) and the respective relator in person. The latter was not accompanied or represented by counsel. The procedure adopted was for the assistant district attorney to read from the affidavit of the police detective in charge, and to ask that the court hold the relator as a material

and necessary witness. On the issue as to whether the relators were, in those proceedings, "given" "an opportunity" to "be heard in opposition", so that each might respectively "show cause why he should not be required" to give bond or be committed, I quote from the minutes of those proceedings in full: As to Michael Galgano: "The Court [the County Judge]: Have you anything to say why you should not be held as a material witness? Michael Galgano [one of the relators]: I am innocent of the thing. I wasn't even there. The Court: What bail do the People ask? Mr. Altschuler [the Assistant District Attorney]: The People ask $50,000.00 bail and 48 hours notice. Michael Galganos: Your Honor, I think it is no more than right I should have a lawyer. The Court: Have you a lawyer? Michael Galgano: Yes, sir. The Court: Yes, well, you can have your lawyer see you in Bronx County Jail to which you will be committed". And, after the order of commitment and bail was read into the record, the court said to Michael Galgano: "You will be permitted to phone your lawyer from the Bronx County Jail". And as to Anthony Galgano (at another time and in a separate proceeding): "The Court: Have you anything you wish to say, Mr. Galgano? Anthony Galgano: No ".

Thus it appears that each relator was privileged to say what he wished. But it is also clear, as of record, that neither was informed that he might confer with an attorney or that he might have an attorney represent him at the hearing; and that in one instance the request of the relator to "have a lawyer" was in effect overruled. Thus the basic controversy before me is — Were, in fact, the instant orders made by the County Judge "after an opportunity [had] been given to such [persons] to appear before such judge and be heard in opposition thereto "? Does that opportunity mean that antecedent information must be given to the witness as to his right to confer with and be represented by counsel? Does it require that preliminary legal consultation and representation by counsel at the hearing — at least, when requested — be not denied? If the "opportunity" to "be heard in opposition" does not as a matter of law envisage any of these matters, then the writ should be dismissed; if it does, the writ should be sustained. The problem is at once as simple and as difficult as that.

The issue is not to be resolved on the basis of a generalization: "Defendants in criminal cases are entitled to have lawyers represent them; these relators are not defendants, but are witnesses only, and witnesses are not entitled to have counsel ".

That may be the common thought, but unless understood properly, that thought may lead us into grievous error. It is axiomatic that in general a defendant in a criminal action is entitled, if he wishes, to be represented in that action by an attorney at law (N. Y. Const., art. I, § 6; Code Crim. Pro., §§ 8, 188, 308), and that, on the other hand, a witness — qua witness — is not as a matter of right entitled to counsel (*People ex rel. McDonald* v. *Keeler,* 99 N. Y. 463, 484–485). On the basis of these recognized precepts, it is easy to jump to the conclusion that, since the proceedings under section 618-b were not criminal proceedings, and that since the relators here were not defendants in a criminal action before the County Judge, but were merely necessary and material witnesses in a pending criminal action against others, the relators were not entitled to be represented by an attorney.

This assumption fails to take cognizance of a vital distinction between a witness to be subpœnaed to testify under ordinary procedure, and a witness to be committed to testify under section 618-b. In the first case, the desired adjudication is not directed against the witness, and all that is required of him is that he appear in response to the subpœna and give testimony leading to the adjudication against others. The controversy is not with the witness. There is no threat of commitment or bail, if he speaks the truth. He therefore has no right to counsel, because legally he needs no counsel. Not so, in the case of a necessary and material witness against whom the machinery of section 618-b is set in motion. The controversy — although preliminary to the main criminal action pending against others — is directly with the witness. The prospective adjudication is expressly directed in that preliminary proceeding solely against him. He is not there questioned as a witness before the County Judge. Even if he is willing and offers then and there to tell the truth at that hearing, he nevertheless may still be faced with jail if he does not post sufficient bail to satisfy the County Judge that he will appear and testify on a subsequent date. In my view, therefore, the general formula that " a witness is not entitled to counsel " is inapplicable to a witness proceeded against under section 618-b.

Assuming — as I hold — that a witness proceeded against under section 618-b is entitled upon request to have a lawyer represent him in that proceeding, the next question is, whether the failure or refusal to accord him that representation is a deprivation of a substantial right in violation of statutory or constitutional requirements. It may be urged that a lawyer

can do very little at the hearing in the protection of the interests of a client with respect to whom section 618-b is invoked, particularly since the "proof on oath" necessary to "satisfy" the County Judge "is not required to be evidence of the kind upon which judgments rest", and since the statute, as a proper and effective aid in the administration of criminal justice, "should not be frustrated by applying acid tests to the proof submitted" (*People ex rel. Ditchik* v. *Sheriff of Co. of Kings*, 171 Misc. 248, 250, affd. 256 App. Div. 1081).

I do not go along with the notion that in a proceeding of this character the lawyer has no appropriate function. The free, able, loyal, devoted and ethical lawyer — the normal member of our bar — would undoubtedly be anathema to the totalitarian. "The first thing" a dictator thinks of doing to consolidate his power would of course be to "kill all the lawyers" (Shakespeare's Henry VI, part II, act IV, scene II) — unless he could coerce the profession into becoming a subservient tool of his dictatorship (see address by Edwin M. Otterbourg, N. Y. L. J., Dec. 15, 1952, p. 1485, col. 4). Under a constitutional democracy, such as ours, the lawyer and his calling are recognized and appreciated for what they truly are — mighty bulwarks against oppression or injustice and invaluable aids in the fair administration of our self-determined legal and judicial systems.

There can be no doubt that in a proceeding under section 618-b — as in any other justiciable controversy — the lawyer as advocate can be of valuable professional service in the legal protection of his client's rights. For example, he may seek to show, in a proper case, that there is in fact no pending Grand Jury inquiry or hearing (*People ex rel. Nuccio* v. *Warden, 8th Dist. Prison,* 182 Misc. 654), as distinguished from an investigation being conducted in the District Attorney's office (*People ex rel. La Tempa* v. *Hughes,* 182 Misc. 1078) — that is, he may seek to show that there is no criminal action or proceeding pending, as required by the statute (*Matter of Prestigiacomo,* 234 App. Div. 300). Or, in opposition to the affidavit of the assistant district attorney to the effect that his client was present when the acts now under investigation were committed, and thus a necessary or material witness, he may seek to submit convincing proof that the witness was elsewhere (UNTERMEYER, J., dissenting in *People* v. *John Doe* [*Re Bernoff*], 261 App. Div. 504, 512). Or, far from a likelihood that his client will not appear to testify when required, he may seek to establish by overwhelming evidence that the client will be available as

a witness at the trial (UNTERMEYER, J., dissenting in *People* v. *John Doe* [*Re Bernoff*], 261 App. Div. 504, 512, *supra*). Or, he may seek to present facts as to the appropriate amount of the bail to be fixed — for, while the '' bailing court has a large discretion '', '' it is a judicial, not a pure or unfettered discretion. The case calls for a fact determination, not a mere fiat '' (*People ex rel. Lobell* v. *McDonnell*, 296 N. Y. 109, 111). The '' reasonableness of bail in any case depends upon examination of the particular record '' (*People ex rel. Rao* v. *Adams*, 296 N. Y. 231, 234). The factual matters to be taken into account include, among other things, the seriousness of the crime under investigation; the penalty which may be imposed; the character, background and criminal records, if any, of the prospective witness; his pecuniary and social condition and general reputation; his relationship to others against whom he may be called to testify; the probability of the willing appearance of the witness or the possibility of flight to avoid giving testimony; the difficulty if not impossibility of procuring his return if he does leave the State (*People ex rel. Rothensies* v. *Searles*, 229 App. Div. 603, 604). Or, the attorney may seek to show that the witness has been detained for an unreasonable time (N. Y. Const., art. I, § 5); and the County Judge, retaining control of the situation by the form of his order, may at any time instigate an inquiry as to the detention (*People* v. *John Doe* [*Re Bernoff*], 261 App. Div. 504, 507).

In short, the section contemplates not a unilateral *pro forma* disposition, but (at least, when a request therefor is indicated by the witness sought to be committed) an adversary judicial hearing. Section 618-b '' serves a very useful public purpose and in proper cases should be availed of to further the administration of justice '' (*People ex rel Richards* v. *Warden of City Prison*, 277 App. Div. 87, 89), but it is recognizably '' harsh and carries interference with personal liberty to an extreme limit. Strict compliance with its provisions should be exacted.'' (*Matter of Prestigiacomo*, 234 App. Div. 300, 301.) In such context, a lawyer is a valuable, if not necessary, concomitant of the legal proceeding, peculiarly fit to give meaning and substance to the hearing, and to the mandate that the judge cannot act until '' after an opportunity has been given '' to the witness to '' be heard in opposition '' to his commitment and bail.

It cannot be gainsaid that, in plain language, the statute requires a hearing, and that this requirement is jurisdictional. '' What, then, does a hearing include? Historically and in practice, in our own country at least, it has always included

the right to the aid of counsel when desired and provided by the party asserting the right. The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel " (*Powell* v. *Alabama,* 287 U. S. 45, 68.)

A defendant accused of even a minor crime is entitled in this State to professional consultation and representation (*City of New York* v. *Wierzibicki,* 137 Misc. 427; *People* v. *Berg,* 200 Misc. 203). The relator Michael Galgano is not a defendant, but he may be and was held in high bail (*People ex rel. Rao* v. *Adams,* 296 N. Y. 231; *People ex rel. Weiner* v. *Collins,* 22 N. Y. S. 2d 774, affd. 260 App. Div. 806) ; and, in default thereof, he may be imprisoned for at least a number of months (*People ex rel. Gross* v. *Sheriff of City of N. Y.,* 302 N. Y. 173) and, no matter what his earning capacity or his personal or family need, he may compel compensation as an incarcerated witness at the rate of no more than $3 per day during detention (Code Crim. Pro., § 618-b).

Section 618-b was enacted in 1904; it was last amended in 1915. The issue now posed does not appear to have been decided heretofore.* I must therefore make my decision on my own, unaided by precise authoritative precedents. In my view, a layman who asks for leave to " have a lawyer " is not to be expected to " show cause " before a court — at least where his liberty is at stake — without the benefit of counsel; and such a layman is not, as a matter of genuine substance, " given " an " opportunity " to be " heard in opposition " unless he is permitted as requested by him to confer with and be represented

---

* In *People ex rel. Ditchik* v. *Sheriff of Co. of Kings* (171 Misc. 248, 249, affd. 256 App. Div. 1081), the court overruled the contention of the relator that he was committed without a hearing, as the proof was specific that he in fact did appear at the hearing and was in fact heard in opposition. Whether there was any request for and refusal of permission to be represented by counsel does not appear from the opinion and I have not been able to obtain the record in the time available to me.

In *Matter of Rankin* (330 Mich. 91), it appears from the opinion that an attorney represented the witness at the hearing in pursuance of a statute similar to that in this State.

I have ascertained that, as a matter of policy, the practice in at least some of the other counties of this State is to allow a witness proceeded against under section 618-b to have counsel.

In *People ex rel. Gellis* v. *Warden* (*sub nom. People ex rel. White* v. *Warden,* N. Y. L. J., Oct. 17, 1931, p. 326, col. 1), it seems that request was made after hearing and commitment for leave to advise with counsel, and that such request was denied. The writ sued out, upon this ground, among others, was denied, without opinion.

by counsel at the hearing. To hold that it is legally proper to compel a witness, while under restraint, and after denial of his request for counsel, to " show cause " before a judge why the restraint should not continue unless bail be furnished, is, I think, not consistent with the plain meaning of the statute requiring an " opportunity " " to be heard " " in opposition " to the order of commitment and bail. To hold that the person against whom the proceeding is instituted as a " necessary and material witness " and who promptly asks to confer with his lawyer or to have his lawyer represent him as counsel in that proceeding, may validly be denied that request is, I believe, to make a hollow shell of the proceeding, a mockery of the contemplated judicial hearing, and to render substantially meaningless the jurisdictional requirement that the witness be " given " an " opportunity " to be " heard in opposition ". And so to hold might raise grave constitutional issues — State and Federal — which of course I should seek to avoid (*Ashwander* v. *Tennessee Valley Auth.*, 297 U. S. 288, 347; McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 150).

I shall therefore sustain the writ as to Michael Galgano to the extent of directing that he be brought before the court in pursuance of section 618-b so that he may be accorded the right to counsel in compliance with the requirements of the statute that he be given an opportunity to be heard in opposition to the proposed commitment and bail.

As to Anthony Galgano, the situation is quite different. He was informed of the nature of the proceeding, and, when the learned County Judge asked him whether he had anything he wished to say, the response was in the negative. He did not ask for the right to confer with or be represented by counsel. He was given an opportunity to be heard. He expressed no opposition — although given the opportunity — to the order of commitment and bail. There was no proof before me that Anthony Galgano was not aware of the nature of the proceeding or that he was denied the right to confer with and be represented by counsel. The allegation in the petition that this relator was not " accorded the right of counsel " is therefore not sustained. Not sustained, that is, unless it was incumbent upon the County Judge to inform this relator as to his right to counsel. The question may not be entirely free from doubt, but I am of the view that neither statute nor Constitution imposes such a requirement.

The Fourteenth Amendment to the Federal Constitution does not — except in a direct prosecution for a crime punishable

by death — compel a State to inform the defendant of his right to counsel (*Quicksall* v. *Michigan,* 339 U. S. 660; cf. *Powell* v. *Alabama,* 287 U. S. 45). And in any other than a capital case, the denial of counsel in a State criminal action is — if nothing more is shown — not a violation of the " due process " clause of the Fourteenth Amendment (*Bute* v. *Illinois,* 333 U. S. 640; *Betts* v. *Brady,* 316 U. S. 455; cf. *Gibbs* v. *Burke,* 337 U. S. 773; *Smith* v. *O'Grady,* 312 U. S. 329, and *Uveges* v. *Pennsylvania,* 335 U. S. 437). The Constitution of the State of New York provides that " in any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions " (art. I, § 6). This guarantee, as applied to criminal prosecutions, has, it is said (*People* v. *Koch,* 299 N. Y. 378, 381) " been implemented by the legislative act which makes it mandatory upon the court to inquire of the defendant upon arraignment if ' he desire the aid of counsel, and if he does the court must assign counsel ' (Code Crim. Pro., § 308)."

If the proceeding under section 618-b is, of itself, a criminal action or proceeding or the prosecution for a crime, I should hold that preliminary inquiry as to counsel would be mandatory (*People* v. *McLaughlin,* 291 N. Y. 480). But an order of commitment and bail as a necessary and material witness does not entail many of the consequences of a judgment of a felony conviction — for example, suspension of civil rights, forfeiture of public office, loss of right to vote, subjection to deportation if an alien, or to denaturalization proceedings if not a native-born, computation in case of a multiple criminal offender, effect upon credibility as a witness, etc. Therefore the fact that one has been held under section 618-b is not in any sense tantamount to conviction for the commission of a crime.

True, in one case the witness is subjected to commitment in the house of detention for witnesses; and in the other, the defendant is subjected to imprisonment; and thus each is deprived of his liberty. But so is a husband who violates the court's direction to make certain alimony payments. And similarly is a respondent who disobeys an injunction of the court, or a witness who ignores a subpœna. Other examples may come to mind. It has never been held to be a denial of due process or of other constitutional guarantees to fail in advance to inform a neglectful husband or an enjoined defendant or a subpœnaed witness that he may land in jail, and thus he may have or be assigned counsel. The fact that a proceeding under section 618-b is ancillary to a criminal action, and that in the

other cases the procedures are incidental to civil actions, does not constitutionally encrust upon section 618-b the character of a criminal prosecution. Where the Legislature is of the view that in an ancillary criminal proceeding the person in custody shall be informed of " the right to demand and procure legal counsel ", as in extradition proceedings, it has so provided (Code Crim. Pro., § 838). I do not say that it would have been inappropriate for the County Judge to have informed this relator of the right to counsel, or even that it might not have been advisable. What I do say is that it was not constitutionally or legally mandatory for the judge to have done so under the facts as proved in this case.

As to the other contentions raised in behalf of Anthony Galgano, none in my view has merit, and the only matter worthy of some discussion is the amount of bail. My function in this habeas corpus proceeding is expressed in the language of the Court of Appeals in *People ex rel. Rao* v. *Adams* (296 N. Y. 231, 234): " By resort to a writ of habeas corpus, a relator, be he defendant or witness, is entitled to the constitutional protection against being held unreasonably or in excessive bail. (N. Y. Const., art. I, § 5.) Relief will be granted, however, only to prevent invasion of constitutional right, not because of difference of opinion as to the amount fixed." I do not say that there is any difference of opinion between the learned County Judge and me as to the amount of the bail; but even if there were, I cannot say that the bail determined by him was excessive. The fixing of bail at $50,000 for one held as a necessary and material witness in connection with a case involving charges of murder has heretofore been held not improper (*People ex rel. Weiner* v. *Collins,* 22 N. Y. S. 2d 774, affd. 260 App. Div. 806). No facts whatsoever have been presented to me in support of the contention that this bail in the present instance is unreasonable, and I gave the relator and his attorney full opportunity to present any proof in that regard that they had or wished to procure. None was forthcoming.

Anthony Galgano has thus failed to sustain the burden cast upon him by the law of proving his allegations by a preponderance of evidence (*Walker* v. *Johnston,* 312 U. S. 275). The writ as to this relator will therefore be dismissed, and he will be remanded accordingly.

Settle order as to both relators.