**UNITED STATES ex rel. Charles GLINTON, Petitioner-Appellant,**

v.

**Wilfred L. DENNO, Warden of Sing Sing Prison, Ossining, New York, Respondent-Appellee.**

No. 350, Docket 27429.

United States Court of Appeals
Second Circuit.

Argued June 4, 1962.

Decided Nov. 1, 1962.

Nancy Carley, Jackson Heights, N. Y., for petitioner-appellant.

H. Richard Uviller, Asst. Dist. Atty., New York County, New York City (Frank S. Hogan, Dist. Atty., and Michael R. Juviler, Asst. Dist. Atty., New York County, New York City, on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, and CLARK and WATERMAN, Circuit Judges.

CLARK, Circuit Judge.

Relator was convicted of premeditated murder in the Court of General Sessions, New York, on April 16, 1959. The highest court of that state denied his appeal without opinion, People v. Glinton, 8 N.Y.2d 742, 201 N.Y.S.2d 336, 167 N.E.2d 741, remittitur amended, 8 N.Y.2d 849, 203 N.Y.S.2d 898, 168 N.E.2d 704, and the United States Supreme Court denied certiorari, Mr. Justice Douglas dissenting, Glinton v. New York, 364 U.S. 853, 81 S.Ct. 96, 5 L.Ed.2d 77. The case is here on appeal from the dismissal of the writ of habeas corpus attacking that conviction, United States ex rel. Glinton v. Denno, D.C.S.D.N.Y., 200 F. Supp. 643, after a hearing which we had ordered on a previous appeal, United States ex rel. Glinton v. Denno, 2 Cir., 291 F.2d 541.

In November 1957, the police obtained certain information causing them to suspect the relator, Charles Glinton, of murdering one Jose Rivera, who had died in a fall from the window of Glinton's hotel apartment the previous September. Glinton was arraigned as a material witness in a "John Doe" grand jury proceeding investigating Rivera's death. Section 618–b of the N. Y. Code of Crim. Proc. authorizes the district attorney to request that a judge require bail of any person deemed a material witness in a

pending criminal proceeding and to direct commitment if the prospective witness fails to give bail. Acting on such a request, a state judge set Glinton's bail at $10,000. Upon his failure to furnish the bail, Glinton was jailed in the City Prison. The statute requires a criminal action or proceeding to be pending in some New York court. Otherwise the fixing of bail and alternative imprisonment is unauthorized and void. People v. Doe, 261 App.Div. 504, 26 N.Y.S.2d 458, 461–462; In re Prestigiacomo, 234 App.Div. 300, 255 N.Y.S. 289, 290. Mere pendency of an investigation being conducted in the district attorney's office is insufficient. People ex rel. Fusco (Galgano) v. Ryan, 204 Misc. 861, 124 N.Y.S. 2d 690, 697; People ex rel. La Tempa v. Hughes, 182 Misc. 1078, 50 N.Y.S.2d 433. This requirement was thus initially fulfilled.

Sixteen days after Glinton had been arraigned in open court, at which time his attorney had been present, the proceeding for which relator was committed as a material witness was discontinued by the withdrawal from the grand jury of the matter of Rivera's death. Despite the fact that from then, November 30, 1957, until January 14, 1958, when Glinton was arraigned as the suspected murderer, no criminal proceeding was pending in any New York court, Glinton continued to be incarcerated as a material witness. During this period of illegal detention, see People v. Doe, supra, 261 App.Div. 504, 26 N.Y.S.2d 458; In re Prestigiacomo, supra, 234 App.Div. 300, 255 N.Y.S. 289, Glinton made several statements attempting to exculpate himself, but which connected him with the time and place of the murder and which were used against him at trial. Relator contends that the use of statements obtained during an illegal detention constituted a denial of due process.

Statutes such as § 618–b, N.Y.Code of Crim.Proc., providing for the incarceration of a material witness in a criminal proceeding who fails to give bond as ordered by the court, appear to be fairly common and to have been enforced without question. Barry v. United States ex rel. Cunningham, 279 U.S. 597, 617, 49 S.Ct. 452, 73 L.Ed. 867. See F.R. Crim.P. 46(b). But the extensive possibilities for abuse of personal liberty make necessary the requirement forcibly stated by the New York cases cited above of strict compliance with the statutory provision. The problem for us is raised because of the fact, found by the court below and now not contested, that there was no criminal proceeding pending after November 30, 1957, and hence that the confinement, though initially legal, was illegal for the greater part of its term and particularly during the time when the most damaging statements were obtained. It is implied that an order for submission of the matter to another grand jury was easily obtainable and that failure to secure it was a mere oversight; but this hardly changes the fact of illegality. Oddly, however, this seems to have been overlooked by the distinguished New York Court of Appeals; for in its order extending its remittitur to show the raising of a federal constitutional issue, 8 N.Y.2d 849, 203 N.Y.S.2d 898, 899, 168 N.E.2d 704, it states this as involving the admission in evidence "of statements made by defendant while he was being lawfully detained as a material witness." We do not know what action that great court might have taken had it then appeared that actually the defendant was being *unlawfully* detained.

It seems reasonably clear that such statements could not be properly introduced in evidence in a federal trial had they been obtained from a person illegally detained under color of the similar federal provision, F.R.Crim.P. 46(b). See Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479; McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. See also Judge Bazelon's dissent in Starr v. United States, 105 U.S.App.D.C. 91, 264 F.2d 377, certiorari denied 359 U.S. 936, 79 S.Ct. 652, 3 L.Ed.2d 639, relying on Opper v. United States, 348 U.S. 84, 91–92, 75 S.Ct. 158, 99 L.Ed. 101, and arguing

that an exculpatory statement written by the defendant nine hours after arrest, but before arraignment, and introduced to counter an insanity defense should have been excluded under the McNabb-Mallory rule. On numerous occasions, however, the Supreme Court has insisted that the McNabb-Mallory principle is a federal evidentiary rule, not binding on state courts through the Fourteenth Amendment. See, e. g., Brown v. Allen, 344 U.S. 443, 476, 73 S.Ct. 397, 97 L.Ed. 469; Stein v. New York, 346 U.S. 156, 187, 73 S.Ct. 1077, 97 L.Ed. 1522. Thus, absent a finding of involuntariness or coercion, Culombe v. Connecticut, 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037, federal courts may not upset state convictions where the only basis for alleging that due process has been violated is the use of statements obtained during an illegal detention. Perhaps Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, upon which the relator heavily relies, may suggest a trend in the Court toward an extension of the federal rule to state proceedings. But there involved were violations of constitutional rights, and hence the decision itself does not reach this case. If the principle is thus to be extended it is more seemly that it be done by the Supreme Court than attempted by us.[1]

██ In the present case after a full hearing and a careful review of the evidence set forth at length in his detailed opinion, Judge Murphy found that Glinton's statements were not coerced. D.C. S.D.N.Y., 200 F.Supp. 643, 645. Unless the element of illegality we have noted makes the statements coerced as a matter of law, the judge's findings are amply supported in the evidence and we have no basis for holding them clearly erroneous. And since under the present standards of the law the detention and resulting statements cannot be held violative of federal due process, the conviction is beyond federal reach.

Affirmed.

LUMBARD, Chief Judge (concurring).

█ I concur with Judge CLARK's view that the evidence before the district court amply supported Judge Murphy's conclusion that Glinton's statements were not coerced.

Failure of the district attorney to keep alive the grand jury proceeding, as he could easily have done, New York Code of Criminal Procedure, § 244, or to commence a new proceeding before a new grand jury—which could have been done in a matter of a few hours, as several grand juries are constantly in session in New York County—played no part whatever in the events which led to the taking of several statements from Glinton while he was held as a material witness. The defect in the proceeding, if it had been discovered, would surely not have resulted in Glinton's release.

When Glinton was first arraigned before Judge Culkin on the evening of November 13, the judge apprised him of his right not to answer questions. The next day he was rearraigned in the presence of his counsel, Mr. Ross, who had previously represented him in a criminal matter—before the magistrate's court—and in a civil matter—relating to the insurance policies on Jose Rivera's life. Mr. Ross warned Glinton not to say anything. The order of the commitment shows that it was contemplated that Glinton, as a material witness, would be available for questioning by the district attorney. Glinton's attorney was in fact in touch with the district attorney on several later occasions.

█ The district attorney did not unduly prolong Glinton's detention as a material witness. Those who had knowledge of what occurred when Rivera was

---

1. Current comment upon the far-reaching nature of this problem appears in Keeffe, Practicing Lawyer's Guide to the Current Law Magazines, 48 A.B.A.J. 877, 879–890 (1962), discussing particularly Weinstein, Local Responsibility for Improvement of Search and Seizure Practices, 34 Rocky Mt.L.Rev. 150 (1962).

pushed out of the window on the night of September 12–13, 1957, were all vagrants without family ties and it took the police many weeks to locate them. As the story unfolded the district attorney confronted Glinton with the additional results of the continuing investigation. Although Glinton had been advised at the outset, both by Judge Culkin and his attorney, that he need not answer any questions unless he chose to do so, the record clearly shows that he chose to answer questions of his own free will, apparently in an attempt to clear himself by implicating others. His strategy failed and when the district attorney finally located an eyewitness to the crime, Glinton was immediately indicted. Thus Glinton was in no way denied his constitutional rights and Judge Murphy's dismissal of the writ must be affirmed.

WATERMAN, Circuit Judge (concurring in the result).

I concur in the result reached by my colleagues. It is regrettable that the prisoner here was illegally detained at the time of his "voluntary confession". Moreover, he was in jail neither as a person charged with the commission of a crime nor as a person awaiting arraignment. Instead, state officers, for their own convenience, had jailed him as a "material witness", pursuant to the New York statute permitting such interference with the freedom of movement of persons not suspected of, and not charged with, crime.

I regret that it appears necessary to rationalize the result we reach by stating that, after all, the failure to comply with the prerequisites justifying petitioner's detention was an immaterial and inconsequential slip-up by those officers charged with protecting the unsuspected as well as with pursuing the suspected.

In view of the content of the record, it would appear that petitioner still has an opportunity to present his case in the state courts by way of a motion for reargument in the New York State Court of Appeals.

It seems clear we must affirm the court below, Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961), even though we would not hesitate to declare void a prisoner's confession to a federal crime made in like circumstances if the prisoner were detained by federal officers.