**Robert Clinton SATTERFIELD,
Petitioner,**

v.

**Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.**

**Civ. A. No. 702–E.**

United States District Court
N. D. West Virginia.

Aug. 7, 1967.

---

Lester C. Hess, Jr., Wheeling, W. Va., for petitioner.

C. Donald Robertson, Atty. Gen. of West Virginia, and Thomas P. O'Brien, Jr., Asst. Atty. Gen., Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

Robert Clinton Satterfield is presently confined in the West Virginia State Penitentiary at Moundsville, West Virginia, where he is serving consecutive sentences of life imprisonment for murder and ten years for armed robbery. He was indicted for these crimes on October 2, 1961, and on November 8, 1961, entered pleas of guilty to both charges before the Intermediate Court of Ohio County, West Virginia. Sentence was imposed on December 18, 1961.

Satterfield applied to the West Virginia Supreme Court of Appeals for a writ of habeas corpus in 1965 and later made a similar application to the Circuit Court of Marshall County. Both of these petitions were refused.

After having exhausted the available state remedies, Satterfield filed a petition for a writ of habeas corpus with this Court pursuant to the provisions of 28 U.S.C. § 2254. At the same time he sought, and was granted, leave to proceed in forma pauperis.

In his petition, he sets forth several grounds for federal habeas corpus relief. The first ground is that he requested

counsel during the period of his police interrogation and this request was denied. The second ground is that he was held incommunicado for a period of eight days following his arrest and that the circumstances surrounding this detention and resulting questioning amounted to a denial of due process. The third ground advanced is that his two guilty pleas were induced by "coerced or involuntary confessions." Satterfield alleges in his petition that the interrogating officers obtained a confession to the armed robbery charge without informing him that a murder had been committed during the course of the robbery; and this confession was subsequently used to obtain a confession to the murder.

Since the factual issues presented suggested the necessity for a plenary hearing in this Court, counsel was appointed to represent Satterfield and a hearing was held on April 18, 1967.

The following facts emerged at the hearing. On July 29, 1961, Satterfield and an associate, Patrick Muldrew, committed an armed robbery of a large grocery store in Elm Grove, West Virginia. Satterfield entered the store at approximately 9 a. m., armed and masked, while Muldrew waited outside in the get-away car. After the crime was perpetrated, Satterfield ran from the store pursued by one of the employees. He testified that although he fired several shots in the direction of the store, he was not aware that he hit anyone until he was so told by the Ohio County Prosecuting Attorney. The pursuing employee was killed by Satterfield's bullets.

When he discovered that his confederate had driven off without him, Satterfield fled on foot and spent the night hiding in a nearby wooded area. The next morning he caught a ride to his home in Benwood, West Virginia. The individual who gave him the ride apparently notified the police, and Satterfield was arrested by the Benwood police at approximately 6:45 a. m. Within a short time, he was turned over to officers of the Wheeling Police Department, who transported him to their headquarters.

Satterfield was questioned by several Wheeling Police Officers and confessed to the armed robbery at approximately 8:30 a. m. According to the testimony adduced at the hearing, a prelude to the confession was the arrival of an eyewitness to the robbery, who viewed Satterfield through a one-way mirror and identified him as the person who committed the robbery. Satterfield overheard the remarks of the witness. Almost immediately thereafter he confessed to the robbery. He then directed the officers to the place where he had hidden the money and gun.

Afterward, Satterfield was taken to the office of the Prosecuting Attorney where he learned, for the first time, that he was charged with murder as well as armed robbery.

Satterfield testified that he was then told that he might as well confess to murder since the armed robbery confession could be used against him in a trial for murder. This was a correct statement, since the murder was committed during the commission of a robbery.

Satterfield confessed to the murder and was then lodged in the Ohio County Jail at approximately 2:00 p. m., some seven hours after having been taken into custody. The testimony of the Petitioner and the Respondent's witnesses was substantially in agreement with regard to the above facts. There are some factual controversies, however, which the Court must resolve.

Satterfield testified that he was not advised of his right to consult with an attorney, nor of his right to have appointed counsel, nor of the fact that any statements he made might be later used against him. He also testified that he requested and was denied the use of the telephone to contact his parents or an attorney. The testimony of the police officers contradicted these statements. The officers stated that Satterfield was advised of his rights before the interrogation began and that he made no request to use the telephone.

This Court is confronted with the difficult decision of choosing between this

contradictory testimony. The credibility of Satterfield's testimony is of course suspect because of its self-serving nature. The police are not totally disinterested in the outcome of the case.

It was partly because of the difficulty of resolving conflicts of this sort that the Supreme Court spoke so forthrightly in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). The problem referred to above is well-stated by Justice Black in his dissent to the holding in In Re Groban, 352 U.S. 330, 341–342, 77 S.Ct. 510, 517, 1 L.Ed.2d 376 (1957):

> "The witness has no effective way to challenge his interrogator's testimony as to what was said and done at the secret inquisition. The officer's version may frequently reflect an inaccurate understanding of an accused's statements or, on occasion, may be deliberately distorted or falsified. While the accused may protest against these misrepresentations, his protestations will normally be in vain. This is particularly true when the officer is accompanied by several of his assistants and they all vouch for his story."

■ This Court does not imply that the officers in the instant case falsified their testimony, either consciously or unconsciously. On the contrary, they appeared diligent and conscientious in the performance of their duties. However, it must be recognized that the occasional meritorious claim can all too easily be lost if courts were to habitually accept, without question or doubt, the official version of what transpired during an interrogation. Miranda to a large extent oviates this possibility.

It was later held that the landmark decisions in Miranda and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), were not to be applied retroactively. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

■ Claims of involuntary confessions which arose prior to the effective dates of Escobedo and Miranda must be considered in light of the test of voluntariness, whereas claims arising subsequent to these cases must be evaluated by the standards set forth in Miranda.

■ It seems sufficiently clear that the failure of the Wheeling police to advise Satterfield of his constitutional rights as alleged by Petitioner here and their alleged refusal to permit him to make a telephone call, also as alleged, standing alone, would not by 1961 standards be enough to vitiate his confession.

Although this Court would find that Satterfield was advised of the appropriate constitutional safeguards and that no request was made by Petitioner to telephone his parents or an attorney, if this were essential to the Court's holding, it is the opinion of this Court that, even assuming his allegations here to be true, Satterfield's confession was made voluntarily.

There is no indication in the record that Satterfield was abused or mistreated in any fashion during the interrogation. He testified that he had gone without sleep or food the previous night while he was hiding in the woods. However, he did not testify that he ever mentioned this fact to his inquisitors nor did he apparently make a request for food or rest during the interrogation. It seems to be a fairly sound inference that the major cause bringing about his confession was not his fatigue, but rather the positive identification of the eyewitness.

Still unresolved at this point is Satterfield's allegation that the police officers did not inform him of the fact that he was charged with murder until after he confessed to the armed robbery and directed the officers to the items he concealed near the scene of the crime. None of the interrogating officers testified at the hearing that Satterfield was informed of the murder charge during the interrogation, and this Court accepts as true Petitioner's statement that he was ignorant of the fact that he had hit someone with the volley he fired while fleeing

until he was so informed by the Prosecuting Attorney.

Satterfield testified at the hearing that the interrogating officers said that it would go easier on his family if he confessed and mentioned the possibility of a light sentence and even probation. The officers adamantly denied these statements and this Court believes the police on this point.

Thus, Satterfield's claim is largely reduced to the question of whether the failure of the interrogating officers to inform him of the murder charge while questioning him about the armed robbery is sufficient to deprive his confession of its voluntariness. It would seem, although the Court does not so hold at this time, that the crucial confession here is the one Satterfield gave to the police shortly after being identified by the eyewitness. If this confession were found to be involuntary, then the two later confessions would seem to be equally tainted, flowing as they do from the initial admission. However, since this Court finds the initial confession voluntary, it is not necessary to pass on the subsequent confessions question.

■■■ The wrong which Satterfield allegedly suffered here does not, under the cases, rise to constitutional proportions. The police in questioning a suspect need not inform him of *all* the possible charges against him. Satterfield was undoubtedly aware of the fact that he fired several shots as he fled from the store. And he must certainly have been aware of the *possibility* that he could have hit someone with these wild shots. However, this was a question that he dare not ask of his interrogators since it would have betrayed a knowledge of the crime which was, to say the least, inconsistent with his denials.

■ Furthermore, Satterfield did not state at any time during the hearing in this Court that he would not have confessed to the armed robbery if he had been informed of the murder charge. In order for the alleged deception to be violative of a right guaranteed by the due process clause of the 14th Amendment, Satterfield must show not only that a wrong was committed but that it substantially affected his rights. He evidently expects this Court to draw the inference that he would not have confessed, but for the alleged deception. Under the issue structure of this case, it seems as likely to this Court as a finding of fact that he would have confessed if he had known of the murder charge.

At any rate, the deception here does not rise to the level of psychological coercion in the constitutional sense. See Pembrook v. Wilson, 370 F.2d 37 (9th Cir. 1966), and Castro v. Klinger, 373 F.2d 847 (9th Cir. 1967). These two cases squarely support this Court's holding.

Counsel for the Petitioner refers the Court to the case of United States ex rel. Everett v. Murphy, 329 F.2d 68 (2nd Cir. 1964), cert. denied 377 U.S. 967, 84 S.Ct. 1648, 12 L.Ed.2d 737, as authority for his position. The *Everett* case is immediately distinguishable from the case at bar by the fact that Everett, unlike Satterfield, did not plead guilty to the charge against him. Also, in *Everett* the police by their affirmative actions misrepresented the seriousness of the offense to the suspect. They misled him as to the reason they were taking him into custody. Furthermore, the detective who secured the confession told Everett that the victim "was not hurt bad" when in fact he was already dead. The detective pressed on Everett the idea that although the victim was most irate he (the detective) could handle him if only Everett would tell him what happened. When this charade failed, the detective left the room to "talk" with the victim and on his return told Everett that the victim said Everett had done it. The detective then told Everett again that unless he confessed he would not help him. This sort of prolonged and overt deception distinguishes *Everett* from the instant case.

The second distinguishing factor in *Everett* is that Everett later went to trial and objected to the admission of the confession. Even if Satterfield is correct in the allegations of misconduct which he makes, he still must demonstrate that the misconduct in some way affected his two guilty pleas. Bloombaum v. United States, 211 F.2d 944 (4th Cir. 1954); United States ex rel. Rine v. Boles, 206 F.Supp. 380 (N.D.W.Va.1962), aff'd 305 F.2d 375 (4th Cir. 1962); Brown v. Turner, 257 F.Supp. 734 (E.D.N.C.1966). And this Satterfield has not attempted to do.

Two able attorneys were appointed to represent Satterfield after he was indicted, and he testified at the hearing in this Court that he was satisfied with their efforts in his behalf. This Court cannot help but take judicial notice of the fact that the death penalty was in effect at the time of these crimes and that in entering guilty pleas Satterfield largely precluded the very real possibility of a death sentence. There is no charge anywhere in the record, and this Court does not discern one, that Satterfield's two appointed attorneys did anything other than represent their client's interests to the best of their professional ability.

The last claim for relief which needs to be resolved is the allegation that Satterfield was held incommunicado for eight days after his arrest. Satterfield's stepfather gave strong support to this charge in his testimony. He testified that he telephoned the Sheriff's office repeatedly over the eight day period and was told each time that Satterfield was not allowed to have any visitors. It was not until the eighth day after the arrest that he was allowed to visit his stepson, and then only for a brief period and in the company of a deputy sheriff. After that he was allowed to visit him on the regular visiting days.

The State did not attempt to explain the conduct of the Ohio County authorities and, indeed, there seems to be little or no possible justification for holding Satterfield incommunicado for such a lengthy period when they had already obtained the means, the fruits and three confessions to the offenses.

■ However, this Court does not feel that the detention here, however illogical it may have been, is a sufficient ground for granting federal habeas corpus relief. Even assuming for the sake of the discussion that the so-called McNabb-Mallory rule were applicable to this case,[1] there would still be no basis for granting relief since it is not the illegal detention itself that the rule is directed against but rather the evidence which is obtained as a result of the illegal detention. Satterfield made his initial and, in this Court's view, crucial confession approximately an hour and a half after the interrogation began. Even under the more stringent McNabb-Mallory rule this detention, the primary purpose of which seems to have been to bring in the eyewitness to identify Satterfield, would seem to pass muster.

■ Furthermore, even if it should be established that the detention here was illegal and led to the confession, Satterfield has still made what one judge has called "the highest form of voluntary choice known to the law—confession in open court." Watts v. United States, 107 U.S.App.D.C. 367, 278 F.2d 247 (1960). Once again his guilty pleas preclude, to a certain extent, collateral attack upon his convictions. This is, of course, not a hard and fast rule, but in circumstances such as these it seems appropriate.

An order will be entered denying the prayer of the petition and dismissing the case from the docket.

1. Of course, the McNabb-Mallory rule applies only to the federal courts. United States ex rel. Glinton v. Denno, 309 F. 2d 543 (2nd Cir. 1962), cert. denied 372 U.S. 938, 83 S.Ct. 886, 9 L.Ed.2d 769 (1963).