**William Scott HODNETT, Petitioner,**

**v.**

**A. E. SLAYTON, Jr., Superintendent, Virginia State Penitentiary, Respondent.**

**Civ. A. No. 72–C–10–D.**

United States District Court,
W. D. Virginia,
Danville Division.

May 16, 1972.

William P. Robinson, Jr., Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, District Judge.

William Scott Hodnett petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, to terminate his alleged illegal confinement in the Virginia prison system. Leave to proceed *in forma pauperis* has been granted.

Hodnett was convicted of armed robbery in the Circuit Court of Pittsylvania County on March 13, 1967, and was sentenced to a twenty (20) year term in the State Penitentiary. The conviction arose from a jury trial at which petitioner, represented by court-appointed counsel, pleaded not guilty. The conviction and sentence were affirmed by the Virginia Supreme Court.

In this petition Hodnett alleges several grounds for relief: 1) insanity at time of trial and during commission of offense; 2) the *corpus delicti* was not proved; 3) he was not taken before a magistrate promptly after his arrest; 4) he was denied a fair trial; 5) the indictment was illegal; 6) systematic ex-

clusion of Negroes from the grand and petit juries; and 7) he was the victim of political oppression. He presented these claims by habeas corpus to the Circuit Court of Pittsylvania County, which dismissed the petition, after hearing, on July 20, 1970. The Virginia Supreme Court subsequently affirmed the dismissal. Thus Hodnett has exhausted his available state remedies within the meaning of 28 U.S.C. § 2254 as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). The court now reviews petitioner's claims.

■■ The burden of proof on the issue of insanity rests with the accused. Christian v. Commonwealth, 202 Va. 311, 117 S.E.2d 72 (1960). Due process requires, however, that the state must provide an adequate means by which an accused can raise the issue of insanity at the time of trial and at the commission of the alleged offense. United States ex rel. Smith v. Baldi, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549 (1953).[1] When the opportunity to raise the issue has been provided, a federal court in a habeas corpus proceeding need not inquire again into the mental fitness of the state prisoner. Thomas v. Cunningham, 313 F.2d 934 (4th Cir. 1963). Aware of petitioner's frequent abnormal behavior and of his frequent commitments to the Central State Hospital in Petersburg, the trial court ordered before trial that Hodnett be committed to the Hospital for observation in order to determine his competence to stand trial. It was ultimately determined medically that he was in fact so competent. At the trial three physicians, two of whom were psychiatrists at the Hospital, testified that, upon all the medical evidence, petitioner was not insane at the time the offense was committed. They added, moreover, that at no time has he been diagnosed as mentally ill or insane. The petitioner having had the opportunity to raise the question of insanity at trial, it is unnecessary to explore further the merits of the claim.

■■ Whether or not the *corpus delicti* was proved is more properly a question directed at the weight and sufficiency of the evidence and, as such, this court cannot grant habeas corpus relief unless the conviction was totally devoid of evidentiary support. Williams v. Peyton, 414 F.2d 776 (4th Cir. 1969). Clearly there is evidence, including the victim's testimony, to support the verdict. The probative strength of that evidence is not in issue. Young v. Boles, 343 F.2d 136 (4th Cir. 1965). Hodnett also asserts that the indictment is insufficient because it does not state the form of violence used or threatened in committing the offense. The indictment charges, *inter alia*, that

> Hodnett . . . on one Bruce Grubb feloniously did make an assault, and by the threat and presenting of a deadly weapon and instrumentality, to wit, a knife . . .

The indictment is clearly sufficient. See Pettus v. Peyton, 207 Va. 906, 153 S.E.2d 278 (1967).

■ Hodnett apparently complains that because he was not afforded a preliminary hearing until three weeks after his arrest, the state authorities violated the rule of Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) which requires a Federal prisoner to be taken before a magistrate within a reasonable time after his arrest. It is well established, however, that the *Mallory* rule is not applicable to prisoners in state custody. E. g. Little v. United States, 417 F.2d 912 (9th Cir. 1969); Satterfield v. Boles, 297 F.Supp. 609 (N.D.W.Va. 1967). Since no other infirmities surrounding the arrest are alleged and none appear from the record, the claim lacks merit.

■ Petitioner's fourth and seventh claims, to wit, that he was denied a fair trial and that he was punished for his political beliefs, require no further consideration by this court, since he has failed to allege any facts to support

---

1. See Va.Code Ann. § 19.1–228, et seq.

them. Bare allegations and conclusions of law do not provide a suitable basis for habeas corpus relief. Cf. Marslin v. Schmucker, 89 F.2d 765 (4th Cir. 1937). The claim of an unconstitutional indictment is likewise without merit. The appointment of grand jury members by a jury commission which is in turn appointed by the Judge raises no constitutional issue.

Finally Hodnett complains that discrimination was practiced against Negroes in the selection of petit and grand juries in Pittsylvania County during the period of his trial. Although no facts are alleged to support his claim, the court shall examine the evidence developed at the Circuit Court hearing.

Petit and grand juries are drawn from the seven magisterial districts of Pittsylvania County. In 1967, a pool of about 300 to 500 prospective jurors, apportioned according to the population of the districts, was selected by eight jury commissioners. The commission was comprised of one member for each district and an at-large member, who that year was the sole Negro appointed to serve. The commissioners were required to select persons "of good repute for intelligence and honesty"[2] and were helped moreover by a list of statutory disqualifications and exemptions.[3] In their selection they were not limited to any source, but might, and did, rely on personal knowledge.

The Circuit Court received the testimony *inter alia* of four of the commissioners who were serving at the time of petitioner's trial. All stated that they either knew or became aware of the qualifications of their nominees. Thus if a commissioner did not know a prospective juror personally, he sought recommendations from other citizens and then inquired into his qualifications. Although no commissioner tried to balance its list racially with mathematical precision, two of them had a "general"

plan to secure a racial cross-section. Another testified that he nominated both Negro and white citizens, but that race "wouldn't matter at all." Mr. Charles H. Miller, the Negro commissioner appointed in 1966, submitted names from all seven districts and he was asked by one other commissioner to advise him as to some potential jurors. Mr. Wilson noted further that his and the other lists overlapped to a large extent.

After the jury pool was established, the names were printed on individual slips of paper, folded, and placed in a covered box. For the day of petitioner's trial a venire of 38 persons was requested by the judge, and the clerk chose that number randomly from the slips in the pool. At no time were the names in the pool, from which the venire was drawn, designated according to race.

Of the thirty-eight veniremen selected, at least six were Negroes. From the venire, a panel of twenty was called, of whom at least three were Negroes. One Negro served on the jury which convicted Hodnett.

Customarily, the grand juries in 1966 were selected from a list prepared by the judge, who was similarly guided by certain statutory requirements.[4] The formation of a grand jury was made by the random selection of the clerk, similar to the method used to select a venire of petit jurors. The racial mix of the grand jury which indicted petitioner does not appear in the record.

In 1967 Negroes apparently constituted approximately 25 percent of the adult population of the county, although the commissioner's estimates varied by as much as five or ten percent. Although the evidence discloses that Negroes were under-represented on petitioner's petit jury, this is not controlling, since he was not entitled to a proportionate number of members of his race on the jury.

---

2. Va.Code Ann. § 8–181.

3. Va.Code Ann. §§ 8–174, 8–175, 8–178, 8–182.

4. Va.Code Ann. § 19.1–148.

State of Virginia v. Rives, 100 U.S. 313, 25 L.Ed. 667 (1879).

 To obtain relief petitioner must show purposeful racial discrimination. Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). A showing that a substantial disparity exists between the proportion of presumptively qualified Negroes in the general population and their proportion on juries will establish a *prima facie* case of racial discrimination if the disparity is coupled either with additional positive indicia of discrimination or with a showing that the selection procedure provides an opportunity to discriminate. Stephens v. Cox, 449 F.2d 657, 659 (4th Cir. 1971).

· It does not appear that petitioner has overcome his burden to make out a *prima facie* case. The selection of petit and grand juries from the pool is clearly impartial and nondiscriminatory. Stephens v. Cox, supra. Moreover, although he had the opportunity at the State hearing to do so, he failed to adduce any figures on the percentages of Negroes on the jury list in 1966 or 1967. Clearly there are no "positive indicia of discrimination" here, nor does the opportunity for discrimination appear from the record. The list was not segregated by race, nor were individual names similarly designated in any form. The Constitution does not forbid the personal acquaintance of the commissioner with the prospective juror as a criterion of selection. It only requires that the commissioners learn who is qualified. Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). The testimony developed at the hearing unequivocally indicates that the commissioners did perform this duty. The court is satisfied that the Circuit Court of Pittsylvania County has overcome and erased the evils of discrimina-

tion attributed to it in the *Witcher* cases. Witcher v. Peyton, 382 F.2d 707 (4th Cir. 1967); Witcher v. Peyton, 405 F.2d (4th Cir. 1969).[5] Having failed to meet his burden, Hodnett's claim cannot support the grant of habeas corpus relief.

Accordingly, it is ordered and adjudged that the petition for a writ of habeas corpus be and is hereby dismissed.

---

5. E. g., it was found that in Pittsylvania County in 1962, there was a 4–1 disparity between the racial mix of the adult population and that of the jury list. In addition the names of the prospective jurors were taken from a racially segregated list and were designated and separated according to race on the jury lists. It was also found that no Negro had ever served as a jury commissioner.