Albert A. Oppido, J.
The defendant, Dominie Carhonaro, was convicted of murder in the first degree, and other felonies, after a jury trial. From the appeal of the judgment of conviction, the Court of Appeals has held its decision in abeyance pending the outcome of a hearing, pursuant to People v. Huntley (15 N Y 2d 72) to determine the voluntariness of two inculpatory statements given by the defendant and admitted into evidence at the trial. (People v. Sher, 15 N Y 2d 798.)
A lengthy hearing ensued before the court, and for the first time evidence was elicited giving the court a detailed review of all of the facts and circumstances surrounding the investigation and interrogation of the defendant, his arrest, his detention, the taking of the defendant’s written statement, and the question and answer examination. A thorough inquiry was made into the methods and procedures employed by the police in their investigation of the crimes and of the defendant, Carhonaro. This court has followed the procedure outlined in People v. Huntley (supra). In addition, the court has considered and reviewed the original trial record.
The statements, which were admitted into evidence at the trial, were obtained after the defendant was apprehended and before arraignment. The statements proffered against Carbonaro were a written statement signed by him and a question and answer statement. When the offers were made, defense counsel neither requested a preliminary examination {voir dire examination) nor was an objection taken to their admission.
There being, however, testimony elicited at the trial with regard to certain facts and circumstances surrounding the giving of the written statement and the question and answer statement taken by the Assistant District Attorney, this court charged the jury on the issue of voluntariness of the statements.
The operative facts are as follows: at approximately 4:56 p.m. on April 5, 1962, a robbery occurred at Hansen’s Jewelry Store of Manhasset, Nassau County, New York. During the course of the robbery Donald Hansen, proprietor of the store, was shot to death. Approximately 37 hours later, at 5:45 a.m. on April 7, 1962, the defendant and one, Walter Sher, were apprehended by the Nassau County Police at the latter’s apartment in New York City. Thereafter, Carhonaro and Sher were transported to the Sixth Precinct in Roslyn, Nassau County, New *117 York. They arrived at the precinct at about 7:25 a.m. At the Sixth Precinct Carbonaro appeared in two lineups and was questioned sporadically. At approximately 10:15 a.m., the defendant was taken to Nassau County Police Headquarters in Mineóla, New York. From 10:40 a.m. until noontime he appeared in six police lineups. Formal interrogation of the defendant was not commenced until 12 noon. At 6:00 p.m., however, the defendant signed a completed written statement. The questioning of Carbonaro was interrupted twice at 1:30 p.m. and at 4:47 p.m. so that the defendant could eat. Moreover, at about 5:05 p.m. Carbonaro was brought to the Police Technical Research Laboratory to identify various items of evidence. Thereafter, at 8:05 p.m., Carbonaro gave a second statement, in the form of a question and answer to an Assistant District Attorney. This question and answer was completed at about 8:40 p.m.
Carbonaro was arraigned at approximately 9:50 a.m. on Sunday, April 8, 1962, before the Honorable William Dempsey of the Nassau County District Court.
I. ILLEGAL DETENTION.
The defendant asserts that he was illegally detained and that any confession made during this detention is inherently involuntary. The defendant’s position assumes that the detention of 28 hours, the elapsed time from apprehension to arraignment, is per se illegal.
Although a confession is obtained during a period of illegal detention it remains admissible (People v. Alex, 265 N. Y. 192; People v. Mummiani, 258 N. Y. 394), unless “made under the influence of fear produced by threats, or unless made upon a stipulation of the district attorney, that he [the defendant] shall not be prosecuted therefor ” (Code Crim. Pro., § 395); or unless the inculpatory statement or admission was elicited under circumstances violative of the due process clause of the Fourteenth Amendment. (Culombe v. Connecticut, 367 U. S. 568; Rogers v. Richmond, 365 U. S. 534; Spano v. New York, 360 U. S. 315; Payne v. Arkansas, 356 U. S. 560; Fikes v. Alabama, 352 U. S. 191; Watts v. Indiana, 338 U. S. 49.)
Furthermore, the Supreme Court of the United States has held that in State cases a delay in arraignment was only one factor to be considered in the totality of circumstances in determining the voluntariness of the confession. (Gallegos v. Nebraska, 342 U. S. 55; Stroble v. California, 343 U. S. 181.)
While it is true that section 165 of the New York Code of Criminal Procedure compels that “ the defendant must in all *118 cases be taken before the magistrate without unnecessary delay”, a confession obtained during an unnecessary delay has not been held involuntary solely on that basis. (People v. Elmore, 277 N. Y. 397; People v. Lane, 30 N Y 2d 347 [1961].)
This court is cognizant that the rule in Federal prosecutions requires that confessions obtained in these circumstances be suppressed. (Mallory v. United States, 354 U. S. 449 [1957]; McNabb v. United States, 318 U. S. 332 [1943].) However, this exclusionary rule is the result of the supervisory power the Supreme Court of the United States exercises over the lower courts in the Federal judiciary system. “No New York court has any such supervisory power over the administration of criminal justice as is exercised by the United States Supreme Court.” (People v. Lane, 10 N Y 2d 347, 360; dissenting opinion of Chief Judge Desmond.) Thus far, the Mallory-McNabb doctrine has not been expanded to include a constitutional standard, which the 50 sovereign States must recognize and adhere.to. (Culombe v. Connecticut, 367 U. S. 568 [1961], supra.)
In the instant case, the testimony adduced at the hearing discloses that the defendant was apprehended in New York City about 5:45 a.m. on Saturday, April 7, 1962. After the police had searched the apartment, Carbonaro was brought back to the Sixth Precinct at Bo sly n, Nassau County, New York. He arrived there about 7:25 a.m. Carbonaro appeared in two police lineups and was questioned intermittently until 10:17 a.m. At that time the defendant was taken to Nassau County Police Headquarters in Mineóla, New York. He arrived there at approximately 10:40 a.m. At Police Headquarters Carbonaro appeared in six police lineups. From 7:25 a.m. until about 12:00 noon, the police had little opportunity to discover whether Carbonaro was willing to give a statement. However, after some of the lineups the defendant was advised by the police that he was identified and it would be better if he gave a statement. At noontime interrogation of the defendant began. Shortly thereafter, at approximately 12:20 p.m., Carbonaro admitted his involvement in the homicide. Questioning was then commenced by Detective Skuzenski and Sergeant Farley. Captain (now Inspector) Cummings came in and out of the room to apprise Detective Skuzenski and Sergeant Farley of the answers Walter Sher, Carbonaro’s alleged co-conspirator, had been giving. At about 1:30 p.m. the questioning was stopped so that the defendant and the officers could have a sandwich and coffee. After eating the questioning continued until 4:47 p.m. when the defendant again ate. Instead of con- *119 tinning the questioning the defendant was taken to the Police Technical Research Laboratory where he identified various items of evidence. Thereafter the questioning resumed and the written statement was completed and signed by Carbonaro.
At approximately 8:05 p.m., Assistant District Attorney (now District Attorney) William Cahn began questioning Carbonaro. Another statement in the form of a question and answer was obtained by 8:40 p.m.
There was an admission by the police officer in charge of the case that the investigation was completed between 4:00 p.m. and 6:00 p.m. and that the defendant was available for arraignment at that time. However, the defendant was not arraigned until approximately 9 ;50 a.m. on Sunday, April 8, 1962.
It is undisputed that the Nassau County District Court was open until 11:50 a.m. Saturday, April 7, 1962. However, that court would have been reopened for the purpose of arraignment, if a request had been made. No request was made by any of the Nassau County law enforcement officials on April 7,1962.
Notwithstanding the above facts and circumstances and an admission by one of the police officers to the effect that an investigation is not complete until all the facts are put together, the story is complete and the defendant is questioned and a statement taken, the District Attorney maintains that there existed good reason for the delay in the defendant’s arraignment. The People assert that the interrogation of Carbonaro was necessary in order to ascertain whether a third person was involved in the crimes. The police, until they questioned Carbonaro, believed that a third person had visited the jewelry store to survey its physical layout and to plan the robbery. Thus, the law-enforcement officials desired to know who that third person was. In addition, the police were interested in determining where the murder weapon was located. To this day the murder weapon, a .38 calibre revolver, has not been recovered.
Based upon the facts that the defendant was not arraigned until 28 hours after his arrest, that he was ready for arraignment between 4:00 p.m. and 6:00 p.m. on April 7, 1962, and that the police admittedly desired to obtain a statement from the defendant, the court is of the opinion that there occurred an 11 unnecessary delay ” in arraignment. However, the “ unnecessary delay” without more is insufficient to sustain a holding that the inculpatory statements were given involuntarily. (People v. Lane, supra; People v. Elmore, 277 N. Y. 397; People v. Alex, 265 N. Y. 192.)
*120 H. PHYSICAL COLEGIOS".
The defendant concedes that neither physical brutality nor threats of torturous abuse were employed while he was in the custody of the police.
However, the defendant did testify that at the conclusion of one -of the lineups at Police Headquarters he was punched in the stomach by one of the police officers who was also present in the lineup. Several officers vigorously denied that the defendant was punched. Moreover, Carbonaro could not say who allegedly assaulted him. It is clear that there was a conflict in the evidence and that the issue is solely one of credibility. The court finds that the defendant was neither physically assaulted nor subjected to threats of physical abuse.
III. DENIAL OP BIGHT TO COUNSEL.
The defendant testified that he requested to call his family, so that they might send an attorney, more than 15 times throughout the morning and afternoon of April 7,1962. Sergeant Farley, who was with the defendant from 12 noon until 6:00 p.m., testified that Carbonaro never requested an attorney, to phone an attorney, or to phone his family to send an attorney. Captain Cummings and Detective Brennan testified similarly. However, Detective Skuzenski, who was with Carbonaro from the time of his apprehension until after the written statements were obtained, testified that the defendant requested to call his family twice during the morning of April 7, 1962, but never requested an attorney nor to call an attorney. Detective Skuzenski also testified that he told Carbonaro that he could call his family when the investigation was completed. Testimony elicited from Inspector Spahr, commanding officer of the homicide squad, as to police procedure confirms that a suspect’s request to call his family is generally granted. But, where another member of the family is a suspect, where that suspected member of the family has a criminal record, and where the murder weapon had not been recovered, a request to phone the family will generally be denied, as was done in the instant case.
In People v. Taylor (22 A D 2d 524), the Appellate Division held that where a defendant has asked to call his family and such request is denied and where the defendant’s family has requested to see him, any confession thereafter obtained by the police is inadmissible against him on trial. The Appellate Division said (p. 526): “It seems, therefore, to be a logical and proper extension of the rationale of the Donovan [13 N Y *121 2d 148] and Failla [14 N Y 2d 178] cases * * * to hold that where a defendant has asked to see his family or his family have asked to see him, and such request is denied, any confession thereafter obtained by the police will be inadmissible against him upon his trial. ’ ’
However, the Court of Appeals, in People v. Hocking (15 N Y 2d 973, 975) decided after People v. Taylor (supra) that “ the fact that the police refused a request by the defendant’s father to see and speak with the defendant during the period he was being questioned by the police at the station ” was not in and of itself sufficient reason for excluding the defendant’s confession. However, the Court of Appeals did say that the denial of the above request should be considered along with all the other circumstances of the interrogation in passing on the voluntariness of the defendant’s incriminatory statements.
Although the opinion in the Hocking case did not mention the Taylor decision, the Court of Appeals in effect, seemingly modified that part of the Taylor holding relating to the efforts of the defendant’s family to speak to the accused.
The question that then arises is whether the Court of Appeals in the Hocking case intended to affirm that much of Taylor relating to the request of the defendant to telephone his family. If the Court of Appeals intended to affirm, then it may be argued with propriety that the two requests of Carbonaro to call his family made at the Sixth Precinct in Eoslyn (both requests were admittedly made and permission refused by the police), would taint all subsequent questioning as being violative of the defendant’s constiutional rights.
Thus the question that remains is whether a request by a defendant to telephone his family is the same as a defendant’s request to telephone an attorney. One appellate court, the Fourth Circuit Court of Appeals, has stated: “ We do not however, think that the majority opinion in Escobedo [378 U. S. 478] should be interpreted so narrowly as to hold that the prisoner upon each request to use the telephone expressly explain to his custodians that he intends to telephone his attorney. If the intent exists and he is denied an opportunity to contact the outside world, it is enough to bring this case within the holding in Escobedo”. (Miller v. Warden, Maryland Penitentiary, 338 F. 2d 201, 205 [1964].)
The Appellate Division in the Taylor case, stated (p. 526): “ But even if he does not rationalize his reasons for asking for his family, we must assume that he makes such request in order to obtain help ”.
*122 Rather than speculate as to how much of the Taylor doctrine remains unaffected by the Hocking decision, it is the opinion of this court that it await a more concise and definitive interpretation by the Court of Appeals, possibly in a review of this decision.
Upon reading the Taylor and Hocking cases (supra) together, this court is of the opinion that the Donovan-Failla doctrine may not have been extended to exclude a confession solely on the basis that it was obtained after a request by the defendant to telephone his family.
Thus, this court holds that the fact that a defendant’s request to phone his family has been denied and a confession is then obtained, as is the fact in the case at bar, it is, on the present state of New York law, not sufficient reason in and of itself to exclude the confession solely on that basis. But, that fact should be and must be considered in totality along with the other relevant facts and circumstances in a determination of the voluntariness of a confession. (Cf. People v. Huntley, 15 N Y 2d 72.)
The defendant contends and this fact is undisputed, that the law-enforcement officers failed to warn him of his constitutional' right to counsel and to caution him that anything he said might be used as evidence at the trial. This fact, argues the defendant, necessitates the exclusion of the written statement and the question and the answer. This court finds this argument without merit.
In People v. Gunner (15 N Y 2d 226, 233) where the defendant raised the same argument as here, the New York Court of Appeals stated: “ the rule heretofore announced in our decisions * * * should not be extended to render inadmissible inculpatory statements obtained by law enforcement officers from a person who, taken into custody for questioning prior to his arraignment or indictment, is not made aware of his privilege to remain silent and of his right to a lawyer even where it appears that such person has become the target of the investigation and stands in the shoes of an accused.”
Language in Escobedo v. Illinois (378 U. S. 478, 490 et seq.) is not to the contrary. In Escobedo, the defendant had an attorney and had conferred with him a few days prior to his interrogation at the police station. During Escobedo’s detention by the police his attorney attempted to see his client but was denied access to him. In addition, Escobedo requested permission to see his counsel.
*123 The instant case is clearly distinguishable from Escobedo. In the case at bar the police denied that Carbonaro requested counsel or asked to telephone counsel. On the other hand Carbonaro testified that he requested to call his family twice and the requests had been denied.
Since this court is not ready to equate a request to call his family with a request to contact counsel, the court finds, as a fact, that Carbonaro neither requested the aid of counsel nor asked to telephone counsel. Moreover, the testimony does not reveal whether counsel requested to see Carbonaro (cf. Escobedo v. Illinois, supra) or whether counsel contacted the police or District Attorney’s office.
iv. psychological coercion or menial overbearing.
Carbonaro also asserts that the unnecessary delay in arraignment, and his requests to contact his family, combined with his mental condition, rendered the confessions coerced in that they were products of an overborne mind.
No court has ever devised a clear and understandable guide to which a court could look or apply in determining whether a defendant’s confession was given voluntarily.
The Supreme Court of the United States has outlined the test as follows: “ Whether the behavior of the State’s law enforcement officials was such as to overbear [the suspect’s] will to resist” (Rogers v. Richmond, 365 U. S. 534, 544 [1961]). In Culombe v. Connecticut (367 U. S. 568, 602, supra) the majority opinion defined the test in this manner: ‘1 The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness.” The court then expounded on this definition of voluntariness. “Is the confession the product of an essentially free and unconstrained choice by its maker! If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process ” (p. 602).
New York employs a legislative standard to determine the voluntariness of a confession. Section 395 of the Code of Criminal Procedure provides in part: “A confession of a defendant, whether in the course of judicial proceedings or to a private person, can be given in evidence against him, unless made under the influence of fear produced by threats ”.
The sum total of all of the above expressions is that a court in determining the voluntariness of a confession must look to *124 all of the relevant factors. All facts and circumstances must he weighed and considered. The innermost thought processes of a defendant must be closely examined with complete disregard of whether the defendant spoke the truth. Thus, the test of voluntariness is subjective.
The defendant, Dominic Carbonaro, had been arrested seven or eight times. He was convicted at least twice. Although he dropped out of school after completing the ninth grade Carbonaro was not inexperienced in the methods of police investigation and interrogation. Carbonaro testified that he knew he would be apprehended. He also knew that the jacket which was left at the scene of the homicide would be traced to him. In addition the defendant knew that he was supposed to appear in Criminal Court in New York City on April 9, 1962 to answer a charge of grand larceny.
It must be stressed that the defendant, Dominie Carbonaro, was neither threatened with physical abuse nor mistreated in any manner. Food and cigarettes were procured twice during the interrogation. The testimony sustains the conclusion that no promise of a lesser sentence would be imposed if Carbonaro confessed. Moreover, the defendant was advised that he was identified by some of the persons viewing the police lineups.
Because of the above factors, this court draws the inference that Carbonaro, in knowing that the jacket and .22 calibre revolver which he had left at the scene of the homicide would be traced to him, and that he had been identified at the police lineups, gave up all hope of extricating himself from the situation he was in and confessed to the crimes of felony murder, burglary, assault and attempted robbery.
Thus, the court concludes that the above inference, on balance, outweighs the factors of the unnecessary delay in arraignment, the denial of the defendant’s request to call his family and the defendant’s mental condition.
Therefore, the court finds the following facts have been proven beyond a reasonable doubt:
1. That the inculpatory statements of the defendant were not made under the influence of fear produced by threats; or a promise of immunity;
2. That the defendant was not physically abused by the police authorities;
3. That the defendant did not demand an attorney either prior to or while statements were being taken;
4. That the defendant did request to call his family prior to and during the questioning; and the requests were refused by the police; and
*125 5. That there was an “ unnecessary delay” in arraignment.
Therefore, the court concludes, beyond a reasonable doubt, that each inculpatory statement was given voluntarily. It is ordered that defendant’s application for an order in the nature of a writ of error coram nobis is denied in all respects.