Breitel, J.
Defendant Dominic Carbonaro appeals from a judgment of conviction for murder in the first degree (felony murder), and other felonies, after a jury trial in County Court, Nassau County. The conviction is predicated upon the participation by defendant in the armed robbery of a jewelry store in Manhasset during which one of the proprietors of the store was shot to death by defendant’s confederate. Originally on his appeal to this court, decision was withheld and the case remanded to the County Court for a post-trial confession hearing pursuant to People v. Huntley (15 N Y 2d 72) on the voluntariness of two statements given by defendant and admitted into evidence at the trial (People v. Sher and Carbonaro, 15 N Y 2d 798). After a hearing, the court held in an opinion that the statements were given voluntarily (48 Misc 2d 115).
On this appeal, defendant’s only contention is that the voluntariness of his confessions was not established beyond a reasonable doubt, particularly in view of the hearing court’s findings that there was an unnecessary delay in defendant’s arraign *274 ment and that the police, prior to his confessions, refused to allow him to telephone his family. No other challenge is made to the jury’s finding of guilt. At trial, two eyewitnesses testified that defendant participated in the robbery and defendant himself took the stand and admitted his involvement. The only defense offered was that defendant abandoned the conspiracy in the middle of the robbery and that defense is not raised on this appeal.
As this is a capital case, the court is obliged to weigh the evidence and to determine whether the jury was justified in finding the defendant guilty beyond a reasonable doubt (N. Y. Const., art. VI, § 5; People v. Crum, 272 N. Y. 348, 350). Moreover, this obligation also extends to the hearing court’s finding as to the voluntariness of the confessions, an issue which this court has recently held must be reviewed ‘ ‘ by the same standards applicable to a verdict of guilt ” (see People v. Leonti, 18 N Y 2d 384, 389, 392, cert. den. 389 U. S, 1007; People v. Valletutti, 297 N. Y. 226, 231; compare People v. Perez, 300 N. Y. 208, 216 [indicating prior to the Huntley decision that even in a capital case, the court would not interfere with a jury’s determination on the issue of voluntariness when “ a fair question of fact ” had been presented]; see Cohen and Karger, Powers of the New York Court of Appeals, § 197, p. 740).
On April 5, 1962 defendant and one Walter Sher, armed with pistols, entered Hansen Jewelers in Manhasset, intending to rob the store. Drawing their weapons, defendant and Sher announced their purpose to the four men then in the store: the proprietors, Donald and Edward Hansen; Eugene Formas, an employee; and Robert Reynolds, a messenger. The robbers began to herd their victims into the back of the store but as they did so, Donald Hansen jumped Sher, and Edward Hansen went for defendant. In the ensuing struggle, Donald Hansen was shot, fatally, in the abdomen, Edward Hansen was hit twice, and Formas was also wounded.
Defendant and Sher then fled and on the way out, Edward Hansen managed to tear off defendant’s jacket and tie. The robbers made their escape in an automobile but not before another witness on the sidewalk identified defendant and five others saw, and later identified, the car in which they fled.
*275 At trial, Edward Hansen and Eugene Formas identified defendant as one of the two assailants and defendant appeared in his own behalf to admit his participation in the robbery. (Sher, after his arrest, was committed to a mental institution and had not yet been tried.) Further, two confessions made by defendant to the police on the day of his arrest were admitted into evidence. No voir dire was conducted and no objections were raised as to the voluntariness of the statements.
The evidence establishing defendant’s guilt was overwhelming and he does not now contend to the contrary. At trial, he did testify that during the robbery and immediately before the fight, he became frightened and attempted to persuade Sher to leave. If defendant intended by this testimony to lay the foundation for a defense of abandonment, the facts would not support it for there was no “ appreciable interval between the alleged abandonment ” and the shooting of Donald Hansen (People v. Nichols, 230 N. Y. 221, 229). In any event, defendant’s only contention now is that the two statements taken from him by the police and introduced at trial were involuntary and that, therefore, he is entitled to a new trial, notwithstanding the other evidence of guilt (relying on Haynes v. Washington, 373 U. S. 503, 518).
With only a few exceptions, the testimony given at the confession hearing by defendant and the witnesses for the People did not differ in material respect as to the manner in which the location, arrest, and questioning of defendant occurred.
After the robbery, the police traced the ownership of the suit jacket that Edward Hansen had torn off his assailant and learned that it belonged to defendant. Photographs of defendant were shown to Edward Hansen and another witness who both identified him as one of the robbers. In the early morning of April 7, 1962, less than two days after the robbery, the police arrested defendant and Sher in Sher’s apartment in New York City.
Defendant was then taken to Long Island where he appeared in lineups before several witnesses. Four witnesses identified defendant and three others could not. Detective John Skuzenski, who was in charge of the investigation, testified that on two occasions during the morning of April 7, defendant asked him for permission to telephone his wife. Skuzenski refused to allow *276 defendant to call “until the investigation [was] complete.” At the confession hearing, defendant stated that he had asked many times to call his family, and that he had told the police the reason for the call; namely, to get a lawyer. According to defendant, Skuzenski had actually asked him, ‘ ‘ For what specific reason do you want to call [your family] ? ” On cross-examination, defendant conceded that he had ‘‘ memorized ’’ those words. Skuzenski and other officers denied that defendant had ever asked for a lawyer or indicated that that was the purpose of calling his family. The police witnesses at the hearing did concede that defendant was not advised of his right to counsel or his rights against self incrimination.
Instead of arraigning defendant when the lineups concluded at noon, four officers began the formal questioning of defendant. Skuzenski testified that defendant knew he had been identified and that less than half an hour after questioning began, defendant began to admit his participation in the robbery. According to Skuzenski, defendant had not asked for food during the morning, but ate with the police officers at approximately 1:30 p.m. He was fed again later in the afternoon and given cigarettes. The questioning proceeded in a slow but steady fashion and the transcription of defendant’s first statement was started at 1:55 p.m. and not completed until 6:00 p.m. Skuzenski testified that neither he nor any other officer had threatened defendant with physical force or attempted to coerce him by other means.
Defendant’s version of the questioning was slightly, but not markedly, different. He stated that he knew why he had been arrested and that he had been brought into custody to a police station house “ Seven, eight times ” in the past. His only claim of physical abuse was that, in the morning, an officer, whom he could not identify, punched him in the stomach when ‘ ‘ they thought I was going to jump out the window. ’ ’ Defendant said that he had not wanted to make a statement but did so in part because the officers told him that Sher was putting all the blame on him and that he would ‘ ‘ wind up in the electric chair.” Allegedly, the police told him that he could make a telephone call after he made a statement. On rebuttal, Skuzenski and another officer testified that no one had *277 told defendant that he would go to the electric chair if he refused to make a statement.
At 8:00 p.m. another statement was taken from defendant which was completed in less than an hour. He was arraigned the next morning, April 8, 1962.
The hearing court held that the statements were not made ‘ ‘ under the influence of fear produced by threats; or a promise of immunity.” The court found that the police had refused to allow defendant to call his family, but that he had not demanded a lawyer; and that there had been an unnecessary delay in his arraignment. These factors, however, were outweighed by the court’s “inference” that defendant confessed because the mounting evidence against him had caused him to give “ up all hope of extricating himself” from the crime.
. The evidence adduced at the hearing supports this conclusion. To be sure, there is no dispute that certain factors arising out of the conduct of defendant’s interrogation may be considered as supportive of his claim of involuntariness. First, the police concede that he was not warned of his constitutional rights prior to his statements. As the interrogation took place in 1962, defendant is not, of course, entitled to the protection of Miranda v. Arizona (384 U. S. 436) and Escobedo v. Illinois (378 U. S. 478) but he may “ invok[e] the same safeguards as part of [his] involuntariness claim ” (Johnson v. New Jersey, 384 U. S. 719, 730; People v. McQueen, 18 N Y 2d 337, 344).
It also appears that there was unquestionably an unnecessary delay in defendant’s arraignment inasmuch as there was sufficient evidence for the charge at noon on April 7, before the first confession, and more than enough at 6:00 p.m. (between the first and second statements). The delay was properly considered by the hearing court as a relevant factor in assessing voluntariness, even though it is not dispositive of the issue (Code Crim. Pro., § 165; People v. Alex, 265 N. Y. 192, 194). Nevertheless, this is one case where delay in arraignment should be given little weight. Defendant states correctly that he was in custody for 28 hours before arraignment. Defendant concedes, however, that the offensive delay did not actually begin until the conclusion of the lineups at noon, and almost immediately after that he began to confess his guilt to the *278 police. The second confession followed close on the heels of the first, and the remaining period of incarceration prior to arraignment, while “ illegal,” “ had absolutely no bearing upon the voluntariness ” of defendant’s prior admissions (People v. Vargas, 7 N Y 2d 555, 566; see United States v. Mitchell, 322 U. S. 65, 70). Under the circumstances, then, the relevant periods of offensive delay are 30 minutes for the first confession and 6 hours for the second (compare Haynes v. Washington, 373 U. S. 503, 506, supra, where there was a delay of at least 16 hours after the lineups).
The third relevant factor to be considered in defendant’s favor is the refusal of the police to allow him to call his wife. This court has recently made it clear that ‘ ‘ denial of access to * * * family [is] germane, but in no wise controlling on the issue of voluntariness ” (People v. Hocking, 18 N Y 2d 832, 833). And, when considering the weight to be given this particular factor, it is important to remember that the defendant in this case was not a young, inexperienced first offender—he was a 28-year-old, twice-convicted felon who, by his own admission, had been arrested and questioned by the police at least seven or eight times. This, of course, does not mean that he may not have had a right to speak to his family; rather, it is relevant in considering the effect upon him of the denial of that right.
Defendant also argues that the hearing court erred in failing to find that he had asked for a lawyer. As noted above, the police denied that such a request was made and, therefore, an issue of credibility was raised. There are compelling reasons to support the hearing court’s determination of this issue. To say the least, the veracity of defendant’s testimony that Skuzenski had asked him, “ For what specific reason do you want to call [your family]?” is somewhat suspect, particularly in view of the fact that defendant subsequently admitted that he had “ memorized ” the phrase. Even more important, while defendant testified no less than seven times at trial that he had asked permission to call his wife, not once did he raise the claim that he had asked for a lawyer or that anyone had asked him the “ specific reason ” for his requested call. Under these circumstances, the evidence justifies the conclusion that *279 defendant fabricated his belated claim that he had asked for counsel.
Arrayed against the factors discussed above are a number of considerations which support the finding that defendant’s confessions were not involuntary. There were no claims of physical abuse related to the interrogation or other improper treatment by the police. Admittedly, defendant was not questioned for a lengthy period of time by relays of policemen. The record supports a finding that defendant was not threatened in any manner other than by the justifiable warning that the evidence already marshalled against him all but insured his guilt (see People v. McCallam, 103 N. Y. 587, 598). Defendant made no objection at trial to the introduction of his confessions, nor did he even conduct a voir dire. And, as noted above, the defendant was not a novice, likely to be overcome merely by the surroundings of a police station.
But most important of all, as the hearing court found, the conclusion is inescapable that when defendant confessed, he succumbed not to improper police pressure but to the realities of the situation. By noon, defendant knew that he had been identified by Edward Hansen, the man he had shot, as well as by other witnesses of the. crime. He knew that his jacket had been found and traced to him and that other items of incriminating evidence had been discovered. It was undoubtedly for this reason that defendant began to confess less than half an hour after his questioning began and it is this reason which distinguishes the situation from such cases as People v. Valletutti (297 N. Y. 226, supra), where there was no other evidence inculpating the defendant and the interrogation was severe and protracted. In this case, by contrast, the record supports the conclusion that the defendant confessed, not as a result of police pressure, but simply because he quickly resigned to reality.
Accordingly, the judgment of conviction should be affirmed.