UNITED STATES of America ex rel. Edmund Allen ROSNER on behalf of Dominic Carbonaro, Petitioner,

v.

The WARDEN, NEW YORK STATE PENITENTIARY, DANNEMORA, NEW YORK, Respondent.

No. 71-C-567.

United States District Court,
E. D. New York.

June 3, 1971.

Rosner & Rosner, New York City, for petitioner by Edmund Allen Rosner, New York City.

ZAVATT, District Judge.

## MEMORANDUM

■ This is a petition for a writ of habeas corpus submitted by a prisoner in state custody. The petitioner was convicted of murder, first degree, after a trial by jury in County Court, Nassau County, New York. The charge against him was premised on his participation in an armed robbery of a jewelry store in Manhasset, Long Island, during which the proprietor of the store was shot to death by a co-defendant. On appeal to the New York Court of Appeals from the judgment of conviction, decision was reserved and the case remanded to the County Court for a hearing pursuant to People v. Huntley, 15 N.Y.2d 72, 255 N. Y.S.2d 838, 204 N.E.2d 179 (1965), on the voluntariness of two confessions made by the petitioner before arraignment and admitted into evidence at trial. People v. Sher, 15 N.Y.2d 798, 257 N.Y. S.2d 595, 205 N.E.2d 691 (1965). After said hearing, at which the facts and circumstances surrounding the arrest, detention and interrogation of the petitioner were developed in great detail, the County Court (Oppido, J.) held the two inculpatory statements to have been given voluntarily. People v. Carbonaro, (*Carbonaro I*), 48 Misc.2d 115, 264 N.Y. S.2d 469 (1965). Thereafter, the New York Court of Appeals affirmed the judgment of conviction. People v. Carbonaro (*Carbonaro II*), 21 N.Y.2d 271, 287 N.Y.S.2d 385, 234 N.E.2d 433 (1967). Although it does not appear from the petition whether petitioner has sought his release from custody through state habeas corpus, for purposes of the exhaustion requirement of 28 U.S.C. § 2254, it is sufficient that the claims raised in the instant petition have been passed upon by the state courts in the conventional appellate procedure. Unit-ed States ex rel. Carafas v. LaVallee, 334 F.2d 331 (2d Cir. 1964), cert. denied, 381 U.S. 951, 85 S.Ct. 1798, 14 L. Ed.2d 725 (1965).

## The Facts

The facts material to a determination of the issues raised by petitioner, gleaned from the instant petition, the transcript of the *Huntley* hearing and the two *Carbonaro* decisions hereinabove referred to (where the facts are set forth *in extenso*), may be summarized as follows:

The petitioner, Dominic Carbonaro, and one Walter Sher, were arrested at the latter's apartment in New York City in the early morning hours of Saturday, April 7, 1962 (two days after the robbery in question) by officers of the Nassau County Police Department. After a search of the apartment by the arresting officers, petitioner was taken to a police station on Long Island, where, for the remainder of the morning, he appeared in several line-ups and was questioned intermittently. On two occasions during that period, petitioner's requests to telephone his wife were denied, allegedly to enable the police to complete their investigation. There is no claim, however, that during the custodial period petitioner was denied food, sleep or any other physical necessities.

Formal interrogation of Carbonaro began at 12 noon, and, shortly thereafter, petitioner acknowledged his participation in the robbery. This admission gave rise to the first of the above-referenced inculpatory statements, ultimately signed by the petitioner at 6 P.M. The second such statement was taken at 8 P. M. and reduced to writing within one hour. Carbonaro was arraigned the following morning, Sunday, April 8, 1962, some 28 hours after being apprehended, although it is undisputed that, had the police so requested, the arraignment could have taken place the preceding day.

*Petitioner's Contentions*

In support of his application for relief, petitioner makes the following claims:

(1) The statements made by petitioner during his "illegal" detention are inadmissible "as a matter of law";

(2) The delay in arraigning petitioner was a denial of his right to counsel and deprived him of due process of law, thereby rendering his statements inadmissible "as a matter of law";

(3) The totality of circumstances indicate that petitioner's confessions were elicited in violation of the Due Process clause of the Fourteenth Amendment.

■ Before proceeding to a detailed discussion of the petitioner's claims, two points are worthy of note at this juncture, neither of which can be dispositive of said claims, but both of which may be considered in passing upon their merit. First, it is conceded that prior to making his statements to the police, petitioner was not warned of his constitutional rights. However, since both the interrogation and trial of the petitioner took place prior to the decisions of the United States Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), petitioner was not entitled to the protections required by those decisions. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Nevertheless, the failure to afford such safeguards may be considered on the question of whether a confession is given voluntarily. Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); *see* People v. McQueen, 18 N.Y.2d 337, 274 N.Y.S.2d 886, 221 N.E.2d 550 (1966).

■ Second, although both the New York Court of Appeals and the County Court found an unnecessary delay in petitioner's arraignment, *see* N.Y.Code Crim.Proc. § 165, such detention does not, *ipso facto,* render statements made by the individual so detained involuntary or inadmissible, Brown v. Allen, 344 U.S. 443, 476, 73 S.Ct. 397, 417, 97 L.Ed. 469 (1953); United States ex rel. Glinton v. Denno, 309 F.2d 543 (2d Cir. 1962), cert. denied, 372 U.S. 938, 83 S.Ct. 886, 9 L. Ed.2d 769 (1963), unless, of course, the conditions of the detention are such that the confession is not "the product of an essentially free and unconstrained choice," and is thereby violative of Due Process. Culombe v. Connecticut, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L. Ed.2d 1037 (1961). Moreover, the Supreme Court has also held that a delay in arraignment may be considered as a factor in the "totality of circumstances" relied upon in assessing voluntariness. Stroble v. State of California, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872 (1952); Gallegos v. State of Nebraska, 342 U.S. 55, 72 S.Ct. 141, 96 L.Ed. 86 (1951); *see* United States ex rel. Russo v. State of New Jersey, 438 F.2d 1343 (3d Cir. 1971).

In his first claim, petitioner likens his detention to an illegal arrest and his confessions to the fruits of a search incident thereto, reaching the conclusion that, just as the evidence obtained from an unlawful search must be suppressed, it follows *a fortiori* that statements which are the "fruits" of an illegal detention must be suppressed as well. Again arguing from analogy, petitioner contends further that, since his detention violated the prompt arraignment provision of N.Y.Code Crim.Proc. § 165, it should likewise be held unlawful for purposes of declaring inadmissible the allegedly tainted confessions.

Petitioner's argument, while metaphorically interesting, is not legally persuasive. Nowhere does he claim that his arrest itself was unlawful but, rather, he broadly asserts that his detention, likened to an illegal arrest, rendered inadmissible the statements they engendered. As indicated *supra*, the well-settled rule is to the contrary, viz., that, absent a showing of involuntariness violative of due process, the illegality of a

detention does not make prearraignment statements per se inadmissible. *Glinton, supra,* 309 F.2d at 545.

Petitioner's reliance on Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) for the proposition that the verbal evidence "seized" as a result of his illegal detention must be suppressed is misplaced. In *Wong Sun,* the Supreme Court was concerned with the *immediate* effect of an unwarranted intrusion rather than a lengthy detention, holding that "verbal evidence which derives so immediately from an unlawful entry" must be treated like tangible evidence for Fourth Amendment purposes. 371 U.S. at 485, 83 S.Ct. at 416. Petitioner's claim that his confessions were the inadmissible fruits of an illegal detention was presented to the United States Supreme Court in Morales v. State of New York, 396 U.S. 102, 90 S. Ct. 291, 24 L.Ed.2d 299 (1969), but was not squarely resolved. Instead, the Court deferred to the finding of the state court that the confessions in question were given voluntarily, a matter which, as will appear *infra,* bears significantly on this court's determination of petitioner's third claim. *See* Clewis v. State of Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967).

Petitioner's second claim revolves around his assertion that the delay in arraigning him deprived him of the right to assistance of counsel and, consequently, the statements made during this delay were elicited in violation of due process and are thereby inadmissible. He attributes to the police a motive to deprive him of the assistance of counsel and to elicit inculpatory statements. From this he argues (as in his first claim), that statements given during an unnecessary delay in arraignment are per se inadmissible as a violation of the right to counsel.

■ As already indicated, under the then-applicable law (before *Miranda* and *Escobedo*), there was no constitutional requirement to warn petitioner of his right to counsel. Surely, then, this failure so to warn the petitioner cannot serve as the predicate for a purposive denial of assistance of counsel on the part of the Nassau police. United States ex rel. Dukes v. Wallack, 414 F.2d 246 (2d Cir. 1969).

■ In Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), the Supreme Court held that the Sixth Amendment right to counsel attaches to any "critical stage" of the criminal proceeding. Petitioner cites many decisions of the New York Court of Appeals in an apparent (although unstated) attempt to show that the custodial interrogation period is such a "critical stage." However, while the New York courts have gone far to attach the right to counsel at progressively earlier stages of the criminal proceeding, Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); People v. Waterman, 9 N.Y.2d 561, 216 N.Y.S.2d 70, 175 N.E.2d 445 (1961) (after indictment); People v. Meyer, 11 N.Y.2d 162, 227 N.Y.S.2d 427, 182 N.E.2d 103 (1962) (after arraignment but before indictment); People v. Rodriguez, 11 N.Y.2d 279, 229 N.Y.S.2d 353, 183 N.E.2d 651 (1962) (during arraignment); People v. Richardson, 25 A. D.2d 221, 268 N.Y.S.2d 419 (1st Dept. 1966) (while defendant is being held in a courthouse detention cell awaiting arraignment); People v. Donovan, 13 N. Y.2d 148, 243 N.Y.S.2d 841, 193 N.E.2d 268 (1963) (where defendant requests counsel or where counsel requests to see defendant), they have not extended the right to counsel to the period of detention and questioning after arrest but preceding arraignment. In People v. Stockford, 24 N.Y.2d 146, 299 N.Y.S.2d 172, 247 N.E.2d 141 (1969), the New York Court of Appeals held that, whether an arrest is effected with or without a warrant, "a rigid rule shutting off police inquiry [during the post-arrest interval] * * * until counsel was present would unnecessarily hamper proper investigation * * *." 24 N.Y.2d at 149, 299 N.Y.S.2d at 174, 247 N.E.2d at 142.

■■ As to petitioner's claim that he requested a lawyer while in custody (which request was allegedly denied), this court, after examining the *Huntley* hearing transcript, accepts the factual finding of the two state courts that no such request was ever made. *Carbonaro I, supra,* 264 N.Y.S.2d at 477; *Carbonaro II, supra,* 21 N.Y.2d at 278–279, 287 N.Y.S.2d at 391. Nor does petitioner's request to speak to his wife amount to a request for counsel within the New York rule as set forth in *Donovan, supra.* People v. Taylor, 16 N.Y.2d 1038, 265 N.Y.S.2d 913, 213 N.E.2d 321 (1965); *see* People v. Hocking, 15 N.Y.2d 973, 259 N.Y.S.2d 859, 207 N.E.2d 529 (1965).

The federal rule is even more stringent. In Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), no constitutional violation was found to exist where the defendant was not given access to a lawyer even after he said, "I think I had better get a lawyer before I talk any more." The Court distinguished *Escobedo* on the ground that, in *Frazier,* the request was not as clear or unambiguous as that made in *Escobedo.* 394 U.S. at 739, 89 S.Ct. at 1424. In *Dukes, supra,* a post-*Escobedo* case, *Frazier* was held to be controlling where the defendant never made a request to consult with counsel but stated that he wanted to see his girl friend. The court in *Dukes* found that, despite defendant's claim that the reason for seeing his girl friend was to ask her to obtain a lawyer, there was no indication that he conveyed this intention to the police. 414 F.2d at 248. The instant case, factually similar to *Dukes,* presents an even more compelling situation for holding that no denial of the right to counsel has been shown, since the operative facts herein occurred *prior* to *Escobedo.*

Finally, petitioner places mistaken reliance on People v. Veitch, 26 A.D.2d 764, 271 N.Y.S.2d 729 (4th Dept.1966) as support for this aspect of his petition. The court in *Veitch* (a memorandum decision of the Appellate Division) was not concerned, as petitioner asserts, with the denial of counsel occasioned by a delay in arraignment, but, rather, with the failure of the police to give *Miranda* warnings. The so-called "delay" of 1½ hours in arraignment in that case was for the purpose of typing a confession made by the defendant during the preceding interrogation (which ended before the allegedly illegal "delay"), and not for the purpose of further interrogation.

■ Petitioner's third major claim is that the totality of circumstances indicate that his statements were obtained in violation of rights guaranteed by the Due Process clause of the Fourteenth Amendment. In this regard, the court is mindful of the decision of the Supreme Court in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), setting forth the standards by which a federal court, in a habeas corpus proceeding, must hold an evidentiary hearing. Generally speaking, if a full and fair evidentiary hearing was held in a state court, at which the facts relevant to the petitioner's claims have been reliably found, the federal court may defer to these findings of fact in determining the merits of the petitioner's claims. 372 U.S. at 312–313, 318, 83 S.Ct. at 757, 760.

In this case, after an evidentiary hearing, the County Court found that, despite an undue delay in arraignment, the inculpatory statements made by the petitioner were voluntary; that they were not the result of physical or psychological coercion, or refusals to permit the petitioner to call his wife. The court also found that petitioner never demanded a lawyer. In affirming the judgment of conviction, the New York Court of Appeals, after a thorough examination of both the trial and hearing records, found that the evidence supported the conclusions of the hearing court. The Court of Appeals found that when the petitioner confessed, he did so in recognition of the "realities of the situation" rather than as the result of "improper police pressure." 21 N.Y.2d at 279, 287 N.Y.S.2d at 391, 234 N.E.2d at 437. Furthermore, with respect

to the allegedly incriminating effect of the arraignment delay, the court significantly noted:

"* * * this is one case where delay in arraignment should be given little weight. Defendant states correctly that he was in custody for 28 hours before arraignment. Defendant concedes, however, that the offensive delay did not actually begin until the conclusion of the lineups at noon, and almost immediately after that he began to confess his guilt to the police. The second confession followed close on the heels of the first, and the remaining period of incarceration prior to arraignment, while 'illegal,' 'had absolutely no bearing upon the voluntariness' of defendant's prior admissions [citations omitted]. Under the circumstances, then, the relevant periods of offensive delay are 30 minutes for the first confession and 6 hours for the second." 21 N.Y.2d at 277, 287 N.Y.S.2d at 390, 234 N.E.2d at 436.

The Court of Appeals was also quick to point out that the rapidity with which petitioner began to confess was merely the precursor of an "overwhelmingly strong case" against petitioner, evidenced by his own testimony at trial as to his participation in the robbery (which, he testified, he abandoned before it was consummated).

In substance, it was the opinion of both the hearing court and the New York Court of Appeals that petitioner's confessions were given voluntarily. Although the evidence presented to the state court was not free of contradiction, this court is of the opinion that its factual determination was fully supported by the record as a whole. This being so, the court defers to the state courts' findings of voluntariness in light of the totality of the circumstances surrounding the petitioner's detention and resultant confessions. *Morales, supra;* United States ex rel. Abair v. Wilkins, 333 F.2d 742 (2d Cir. 1964), cert. denied, 379 U.S. 977, 85 S.Ct. 678, 13 L. Ed.2d 568 (1965); *see* United States v.

Freeman, 357 F.2d 606, 627 (2d Cir. 1966).

For the foregoing reasons, the petition for a writ of habeas corpus is denied.

This is an order.