THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
EDWARD V. CLOW, Appellant.

Third Department, July 6, 1978

## APPEARANCES OF COUNSEL

*Michael F. Bergan* for appellant.

*Sol Greenberg, District Attorney (Melissa L. Campbell* of counsel), for respondent.

## OPINION OF THE COURT

MAHONEY, P. J.

At about 10:00 P.M. on April 5, 1975 a man wearing a stocking mask and armed with a rifle robbed a gas station in Slingerlands, New York, and shot the attendant, John Porter. Porter told the police who arrived at the scene that "Ed", a man formerly employed at the gas station, had committed the crime. The defendant, Edward Clow, who was an attendant at the gas station before Porter had replaced him, was arrested at his home (20 miles distant from the crime scene) at about 1:00 A.M. on April 6.

The defendant's wife was present when the police arrived, and she and the defendant consented to a search of their property. The search disclosed two boxes of Winchester .22 calibre long rifle cartridges* in the glove compartment of defendant's car. After receiving the *Miranda* warnings, the defendant was questioned in his home for some 90 minutes. At 3:30 A.M. he was taken by police to the hospital room where Porter was being treated. Porter identified the defendant as the robber.

The defendant was then brought to the Bethlehem Police Station. *Miranda* warnings were again given at about 4:30 A.M. and the defendant was questioned for a short time and then, after a lapse of at least four hours, questioned from 10 A.M. to 12 noon. During this last period he made several statements which could be interpreted as admissions of guilt, the most damaging one being a statement that he would take the police to the rifle and the money if probation could be granted.

---

* An expert testified at the trial that the bullet removed from Porter was a .22 calibre long Winchester and that there are "several dozen" types of .22 calibre ammunition available.

■ Of the grounds raised by the defendant for reversal, only four warrant comment. At the hearing held to determine the voluntariness of defendant's statements, the People established that *Miranda* rights were given and that no tactics amounting to compulsion were used by the interrogators. The defense offered no proof, but on appeal relies on the length of time defendant was detained (1:00 A.M. 12:00 noon) before the admissions were made. Although 11 continuous hours of station house interrogation might indicate compulsion, here there was a total of no more than four hours of actual questioning, one and a half of which occurred at defendant's home with his wife present. There were never more than two continuous hours of questioning. Given these circumstances, the trial court was justified in finding the admissions voluntary *(People v Carbonaro,* 21 NY 2d 271; *People v Johnson,* 51 AD2d 851).

■ ■ At the suppression hearing a defense motion to inspect Detective La Chappelle's notes was denied to the extent it sought the detective's summaries of the statements of witnesses to the crime. Since the notes did not relate to the subject matter of the suppression hearing or in any way to La Chappelle's credibility, the court's decision to grant only part of the defense request was correct. Had the defense motion been renewed at trial, the prosecution would have been obliged to deliver the detective's summaries of the prior statements of the prosecution trial witnesses *(People v Consolazio,* 40 NY2d 446), but no such motion was made at trial.

■ The trial court did not err in admitting the identification testimony of Porter. The showup at the hospital room was clearly proper since Porter had identified the defendant as his assailant before the showup ever occurred (cf. *People v Morales,* 37 NY2d 262, 271). The court properly refused to order a "voice lineup". Porter's ability to identify the defendant despite the stocking mask was not solely based on voice. Porter had talked with the defendant at least three times in person at the gas station in the eight months preceding the robbery. He thus knew the defendant by body characteristics and manner of moving as well as voice. The voice identification procedure proposed by the defense would be subject to the further danger that the defendant would modify his voice to avoid identification. Moreover, there is no authority, statutory or otherwise, for the court to order such an identification procedure.

■ Finally, the defendant contends that Porter should not have been allowed to describe the behavior of the gas station dog during the robbery. Porter testified that the dog would bark viciously whenever anyone but an employee entered the office, that when he visited the gas station following the termination of his employment, Ed Clow (the defendant) was particularly friendly with the dog, and that during the robbery the dog failed to bark. Although there is no authority in this State, there is sister-State authority that the behavior of an animal is competent to prove the human act which would naturally have caused the animal behavior (1 Wigmore, Evidence [3d ed], § 177). Furthermore, Wigmore states that the behavior of an animal acquired during his past association with a particular person may serve to identify it as having been in that person's possession (id.). The behavior of animals is also admissible to prove the animal's familiarity with surroundings and, thus, that it has been there before (State v Ward, 61 Vt 153. See Ann. 61 ALR 888). By analogy, it was proper for the trial court to allow proof of the dog's behavior (with respect to the defendant, other employees, and strangers) before, during, and after the crime.

■ Although no proper foundation was laid for the expert testimony of the two witnesses who claimed to have trained the dog to guard the office, admission of their testimony, adding little to the properly admitted evidence concerning the dog's actual behavior, was harmless (People v Crimmins, 36 NY2d 230, 243).

The judgment should be affirmed.

SWEENEY, KANE, STALEY, JR., and LARKIN, JJ., concur.

Judgment affirmed.